John P. Cohalan, Jr., J.
Defendant, Mary CapoManco, is being sued on a written ‘‘ guarantee of all liability.” The guarantee is absolute on its face. The three questions presented for decision are:
1. What is the multiplicand upon which the agreed fair and reasonable attorney’s fee of 20% is to be based?
2. Is the guarantor entitled to a setoff for prepaid interest? and
3. What, if anything, is owed on the underlying debt to which the guarantee attaches?
1.
The over-all amount guaranteed was $44,493.20. Provision was made in the promissory note (secured by chattel mortgage) of the primary obligor that “ In the event that the Bank for any reason whatsoever shall deem it necessary to refer this note to an attorney for enforcement of collection thereof, there shall be immediately due from each of the undersigned, in addition to the unpaid principal and late charges, all costs and expenses of such action, and an attorney’s fee of twenty (20) per cent of the amounts then owing and unpaid by the undersigned and the Bank may take judgment for such additional amount ”.
As to this point, defendant contends that the note was never referred to an attorney for collection. It appears, however, that all papers were turned over to the attorneys for their decision as to how best to effect collection. That they chose to go against the guarantor rather than the primary obligor does not defeat the granting of an attorney’s fee. To this extent the case of Friedlander v. Scheer (1 Misc 2d 899, affd. 281 App. Div. 808) is distinguishable.
The 15-month note, chattel mortgage and guarantee are all dated January 18,1963. On April 26,1963, the bank decided that the security of its loan was impaired and notified the promisorobligor to that effect by telegram, adding: “ We have instructed representatives to proceed at once to protect Bank’s rights to enforce all remedies ”. Presumably the attorneys were among the representatives referred to.
There were in the bank at the time certain cash deposits of the promisor-obligor in the amount of $22,711.91, which the plaintiff proceeded to transfer to its complete control. The experienced officers of the bank needed no legal or other professional advice to make a decision to effect this transfer.
Thus, by the time the bank’s attorneys got to work to recoup the balance, the amount ‘ ‘ then owing ’ ’ was not more than $21,781.29.
*32 Prepaid and partially unearned interest (as noted hereafter in [2]) in the amount of $2,118.08, must be subtracted, reducing the amount referred for collection to $19,663.21. Acting on the premise that this latter amount is the multiplicand, the fee of the attorneys is set at 20%, or $3,932.64.
2.
The obligors whose indebtedness defendant guaranteed had the use of all the money until April 26, approximately three months. Roughly half of the money advanced was recovered immediately. To the extent shown the court decrees a setoff for the remainder of the 15-month period of the loan, to the amount of $2,118.08, as testified to by the witness Marose, called by plaintiff. The remainder of the interest on the balance of the principal has not been fully recovered to this day; hence no further relief will be granted in this connection.
Plaintiff points out that by statute (Banking Law § 108, subd. 4) a voluntary prepayment of a loan made by a borrower entitled him to a rebate on his interest; and adds that no such provision is made in the event of a default.
Reference is also made to section 305 of the Personal Property Law, which clearly directs the payment of a refund credit to the borrower (or installment purchaser) “ whether or not the maturity of the time balance of the contract was accelerated by the holder by reason of the buyer’s default”. See, also, section 408 of the Personal Property Law.
Arguing the other way, one can say that a defaulting borrower should get the advantage of a rebate (or a setoff) because in a sense he cannot control the loan, whereas the solvent borrower can prepay or not as he desires. This is the rationale of the installment statutes and would seem to be applicable to the instant situation.
In American Jurisprudence (vol. 30, Interest — Advance Payment, p. 14) appears the statement that: “ It is generally held that the reception of interest in advance upon an obligation is prima facie evidence of a binding contract to forebear and delay the time of payment (Skelly v. Bristol Sav. Bank, 63 Conn 83, 26 A 474, 19 LEA 599, 38 AM St Rep 340; Drew v. Towle, 30 NH 531, 64 Am Dec 309; Bank of British Columbia v Jeffs, 18 Wash 135, 51 P 348, 63 Am St. Rep 875. See also 8 Am Jur 34, Bills and Notes, § 292), and no suit can be commenced against the obligor during the period for which the interest has thus been paid. In a few jurisdictions, however, the contrary doctriné prevails, and suit is not precluded by such advance payment *33 (Central Bank v Willard, 34 Mass [17 Pick] 150, 28 Am Dec 284), although the amount of the unearned interest represented by the advance payments must be deducted from the amount of recovery (Illinois Steel Co. v O’Donnell, 156 Ill 624, 41 NE 185, 31, LRA 265, 47 Am St Rep 245) ”.
Plaintiff also urges that custom and usage decree that discounted interest is not rebatable to the defaulting debtor. How the custom originated was not explained.
However, it occurs to the writer that an insolvent debtor — particularly one, as the promisor here, who has gone through bankruptcy — gives little heed to the bookkeeping practices of his erstwhile creditor, and cares not whether the item be carried as principal or interest. Thus the asserted custom and usage may have had its genesis in the fact that the practice was never contested.
Diligent research has uncovered no case in point in this jurisdiction ; hence the court will rely on the statement in Illinois Steel Co. v. O’Donnell (supra) for its interpretation.
3.
As a result of foreclosing the chattel mortgage, the sum of $22,150.50 was realized, but expenses were incurred in connection therewith, including an auctioneer’s fee of 10% of the sale price. The court rejects the argument of defendant that no allowance should be given for the expenses incurred and computes the amount now owed to be as follows:
1. Amount of loan, including prepaid interest............................. $44,493.20
2. Amount transferred by plaintiff to its control................................ 22,711.91
3. Amount to be collected........................ $21,781.29
4. Less setoff (in part) of prepaid interest............................. 2,118.08
5. Multiplicand for attorney’s fee................................ 19,663.21
6. Attorneys fee 20% of 5....................... 3,932.64
7. Balance before foreclosure................... 23,595.85
8. Less amount realized in foreclosure of chattel mortgage................... 22,150.50
*34 9. Balance .....:.............................. 1,445.35
10. Plus expenses in connection with 8 ...................................... 3,332.00
11. Pins auctioneer’s fee in connection with 8............................ $2,214.75
12. Amount for which judgment may enter with interest to be computed from various dates..... $6,992.10