Oscar Murov, J.
This action was brought on by the plaintiff corporation for payment of the sum of $1,276.65. This sum all allegedly represents the balance remaining from moneys paid by the plaintiff, a New York corporation, to St. Francis College, located in Loretto, Pennsylvania, for the tuition of the defendant’s daughter, one Patricia Zicari, who is presently a student at said institution.
The defendant allegedly signed an agreement entitled ‘1 Retail Installment Contract ’ ’ which sets forth the items making up the aggregate amount of the loan or contract as follows:
A — Cash payment of total tuition and other
school fees........................ $8,000.00
B — Charge for credit life insurance to be
procured by the holder.............. 154.40
*919 C — Unpaid balance ..................... 8,154.40
D — Finance charge...................... 1,303.20
E — Annual percentage rate —14.40%
F — Deferred payment................... $9,443.60
The agreement provided for 54 monthly installment payments, each in the sum of $175.70, commencing October 1, 1969. The defendant had in fact “ borrowed ” $2,100, or that sum was advanced by the plaintiff to St. Francis College, and the defendant repaid a portion of said moneys, leaving a balance remaining in the sum of $1,276.65.
The defendant answered this complaint by alleging that:
1. He never signed the agreement herein relied upon as evidence of his indebtedness, but rather, his wife executed the agreement.
2. The agreement is a loan and not a contract for a time-price sale and therefore violates New York’s laws against usury.
The plaintiff bases its claim on the following:
1. This is not a loan but a contract with St. Francis for a time-price sale to which the laws against usury do not apply.
2. Since the college is located in Pennsylvania and the plaintiff is a mere assignee of this alleged contract, Pennsylvania law applies and the allowable finance charges on all retail installment obligations in Pennsylvania are above the charge levied against the defendant.
After trial, the court finds, as a matter of fact and law, the following:
While applying to St. Francis, the defendant’s daughter was sent a brochure informing her of the fact of the existence of “ The Tuition Plan ” and the possibility of borrowing a maximum of $8,000 over a four-year period with planned monthly repayments to commence shortly after she enrolled at the school.
Consequently, the wife of the defendant affixed his signature to this agreement for $8,000 and mailed it to the plaintiff’s offices in New York City. The defendant’s allegation that he is an improper party to this action may be quickly dismissed since at his examination before trial the defendant admitted that the tuition plan agreement was executed by his wife at his specific request and he consequently relied on her to make all the necessary arrangements. Therefore, his contention that he is an improper party is without merit.
The threshold question for this court to resolve is, namely, is this a contract for a time-sale transaction or is this really a loan, though the parties may call it by another name ? The court finds, for the reasons hereinafter stated, that this transaction *920 was not a contract but a loan to which the usury laws of this State do indeed apply.
In order to form a valid contract there must be a person able to contract, a person able to be contracted with, a thing to be contracted for, a sufficient consideration, clear and explicit words to express the agreement, and the assent of both contracting parties (Justice v. Lang, 42 N. Y. 493). However, there is no consideration on the part of the college. Although the agreement in question is labeled a “ retail installment contract ” and the alleged contract purports to bind the college to render services, the court finds that the college has not bound itself to render services. It is true that an official of the college affixed his signature to a line in the agreement, beneath which stated: “accepted by SCHOOL. THIS AGREEMENT IS ASSIGNED TO THE TUITION PLAN, INC. PROVISIONS OE ASSIGNMENT ON THE REVERSE SIDE. ALL PAYMENTS DUE UNDER THIS AGREEMENT ARE PAYABLE TO THE TUITION PLAN INC.” The back of the agreement purports to assign this agreement for value but no evidence of such value appears in the plaintiff’s proof. Even though a recital of consideration is made by language in the agreement, this does not preclude the parties from disputing consideration and does not in itself give the promise any validity (Strobe v. Netherland Co., 245 App. Div. 573; Presbyterian Church of Albany v. Cooper, 112 N. Y. 517). In addition, the fortuitous presence in a transaction of some possibility of detriment, latent but unthought of, is not enough to furnish a consideration for a contract {Beck v. Sheldon, 259 N. Y. 208). The promise and the consideration must purport to be the motive each for the other, in whole or at least in part; it is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting (Allegheny Coll. v. National Chautauqua County Bank, 246 N. Y. 369).
The court is unable to find that the college has, expressly or by implication, agreed to provide the defendant’s daughter with a four-year education provided her parent execute the purported ‘1 contract ’ ’ with the college. Quite frankly, the court cannot find that there is consideration since the college has provided no real value to the defendant’s daughter (Mencher v. Weiss, 306 N. Y. 1). Since the college has not bound itself to provide $8,000 worth of services, the college has not entered into a contract with the defendant since a nonbinding promise is deemed insufficient consideration (Topken, Loring & Schwartz v. Schwartz, 249 N. Y. 206; Hathaway v. Bennett, 10 N. Y. 108).
*921 Consequently, any alleged “ contract ” with the school was a nullity and therefore unenforceable. What has been categorized as a time-sale agreement was, in reality, a disguised loan through which the plaintiff would lend money to individuals with an interest .rate far above the 7%% per annum allowable in this State (L. 1972, ch. 488). This court is not bound to categorize this transaction by applying blinders to its eyes and merely viewing the language used in the agreement. No case is to be judged by what the parties appear to be or represent themselves to be doing, but the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings (Van Bee Serv. Co. v. Household Finance Corp., 51 N. Y. S. 2d 590, affd. 269 App. Div. 772). If it appears that the parties are making a loan, then the transaction will be considered a loan without regard to its form or to the fact that the parties call it by some other name (54 C. J. S., Loan, p. 655).
The plaintiff, in its trial memorandum of law, states that ‘1 the item offered here by the school was the tuition for the student and the purchaser is the parent. It was offered either for an all cash payment or on the basis of installment payments, at a higher price.” Such a claim is patently incorrect. No college, at least none known to this court, provides services for a four year college education on the basis of a lump sum payment of tuition from the time of enrollment until the time of graduation. In Galveston & Houston Investment Co. v. Grymes (94 Tex. 609), the court held that it was usurious to add an amount equal to the maximum rate of interest on the principal for 10 years and divide repayment into 120 equal installments payable monthly, each installment representing the same proportion of principal and interest from one month to the next. The instant case has the same usurious effect since the full face amount of the agreement is never advanced. Indeed, it can never be advanced since the defendant is required to begin repayment while his daughter is still in college at an interest rate based on an amount he will never receive.
Having characterized the within transaction as a loan, the question of whether or not the laws of the State of New York or the laws of the State of Pennsylvania are applicable in making a determination with respect to the facts in this matter can be answered. The intention of the parties, express or *922 implied, generally determines the law that governs an agreement or contract (Compania De Inversiones Internacionales v. Industrial Mtge. Bank of Finland, 269 N. Y. 22, remittitur amd. 269 N. Y. 602, cert. den. 297 U. S. 705). If this were a contract between the defendant and the college, with the plaintiff as a mere assignee, there would be no question that the principle of lex loci contractus would govern and Pennsylvania law would be applied (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135). But this transaction has only the barest thread of involvement with St. Francis and the State of Pennsylvania. The college merely sent a brochure to the defendant advising him of the 1 ‘ Tuition Plan ’ ’ should he be so advised to avail himself of its services. The defendant was advised to send the completed application form to the plaintiff’s offices in New York. All payments were to be made to the plaintiff. Indeed, all involvement with St. Francis ceased after the sending of the application and the alleged assignment by the college by affixing an authorized signature on the agreement. Other than these two minor acts, St. Francis had no involvement with the defendant, made no promises to him, and did not bind itself to render any services to him. Since the college had nothing to assign, the loan, for all intents and purposes, was between the defendant and the plaintiff. Therefore, New York law would apply since the act necessary for the loan to come into being — acceptance by the plaintiff — occurred in New York. When part of an agreement is executed in one jurisdiction and the rest of it, constituting the final act to make it complete, is executed in another jurisdiction, the law of the latter controls (Rag v. Rag, 193 Misc. 131). And the law of this State is clear that the rate of interest on a loan shall be at the rate prescribed by the banking board (General Obligations Law, § 5-501 (subd. 1). Since the action of the parties evidences an attempt to effect a usurious contract, it is not necessary that the usurious agreement be expressed in specific terms (Leibovici v. Rawicki, 57 Misc 2d 141, affd. 64 Misc 2d 858). This method of taking interest in advance has the same usurious result as the deduction of interest from the principal delivered, because it ignores the fact that the principal does not remain outstanding for the duration of the loan in the amount on which the interest was computed (Ann. 57 ALB 2d 630, 666). Thus, if the specified rate of interest is already at or near the maximum permissible rate, the taking of interest in advance may result in a rate exceeding that permissible by the usury laws since money is deemed to earn interest only while the borrower has the use of it (supra, pp. 635, 636). If interest is *923 charged, it should be computed and payable after specified periods of such use.
The court is mindful of the fact that many students in this State have been able to attend college only through the help of various loan programs. For some, it is the difference between a higher education or none at all. In a sense, these programs perform a quasi-public service in permitting those students with sufficient ability and desire to pursue careers of their own choosing without having to accept something less because they lack sufficient financial resources to pursue it. Indeed, many members of the Bar and judiciary would not be members of their profession without the aid of such programs. Therefore, this court has weighed the evidence carefully with this consideration evér present. But however noble the idea of student loans is, its implementation in the arrangement herein clearly violates this State’s laws against usury. And the law is clear that all bonds, bills, notes, assurances, conveyances and all other contracts or securities whatsoever in violation of section 5-501 of the General Obligations Law shall be void (General Obligations Law, § 5-511).
Therefore, the court finds that the contract is unenforceable since it is usurious and judgment is rendered in favor of the defendant and the complaint is dismissed. The defendant’s counterclaim is dismissed on the ground that the defendant has failed to establish it as a valid cause of action.