OPINION OF THE COURT
Norman C. Ryp, J.
"Bonus” or "Precomputed Interest” Legal Lenders Reward or Improper Numbers Game?
A. FACTS
The plaintiff, Bostwick-Westbury Corp. (Bostwick) loaned Clermont Operating Corp. (Clermont) the sum of $23,000 on July 25, 1972, secured by a security agreement (chattel mortgage) dated October 13, 1972 (PX No. 1). PX No. 1 pledged fixtures and equipment owned by Clermont. Financing statements (UCC-1) were duly filed, under section 9-302 of the Uniform Commercial Code on October 20, 1972, to perfect plaintiff’s security interest.
Six months before, defendant, Commercial Trading Co., Inc. (Commercial) had also extended moneys to Clermont in a series of three loans. Such was secured by prior chattel mortgage on Clermont’s identical fixtures and equipment, dated January 14, 1972 (with financing statement [UCC-1], also duly filed on January 17, 1972) and conditioned by payment a $125,000 loan, repayable by 36 consecutive monthly promissory notes, at an interest rate of 16% per annum.[1]
Commercial’s loan No. 1 was an accounts receivable loan that ran from January 14, 1972 until May 21, 1974, when Clermont defaulted, with an unpaid balance of $29,593.68 *404 under various promissory notes with "interest”[2] rates of 16% per annum outstanding on May 29, 1974.
Commercial’s loan No. 2 was a series of advances 60 promissory notes, that commenced December 29, 1972 with an initial advance of $20,000. A balance of $130,135.50, including "interest”[2] or "bonus” of $55,519.90 calculated at the rate of 16% per annum over a five-year period, was outstanding on May 21, 1974.
Commercial’s loan No. 3 was made on November 9, 1973 for $50,000, plus a "charge”[2] for advances of 1/22% per day or about 18% per annum, to be repaid over 55 consecutive months, pursuant to an accounts receivable agreement dated January 14, 1972, with a UCC-1 financing statement duly filed on January 17, 1972. A balance of $68,472 including said charge for advances of $22,088.65 calculated at 18% per annum, was outstanding on May 29, 1974.
Under agreement dated November 10, 1972, 20th Century Industries, Inc. (20th Century) purchased all the outstanding capital stock (500 shares) of Clermont from Philip Kahn, apparently sole stockholder and president of Clermont. Said agreement recognized the liens of Commercial and "of another corporation”. 20th Century guaranteed, inter alia, payment of the debt owed to plaintiff in the amount of $23,000 with interest. Subsequently, a promissory note was given to plantiff by Clermont Operating, dated November 24, 1972 for $10,000 at interest of 8% per annum with a due date of March 1, 1973. This promissory note was dishonored for lack of funds.
Thereafter, 20th Century has paid $16,000 toward the balance of the debt owed to plaintiff, so $7,000 plus accrued interest remains due and owing with recovery thereof as plaintiff’s object herein.
Thereafter, Clermont defaulted on its obligation to Commercial and thereby accelerated its entire indebtedness ($228,201.18) to Commercial. Pursuant to section 9-504 of the Uniform Commercial Code, Commercial then conducted a public auction on May 21, 1974 and sold Clermont’s pledged fixtures and machinery for the gross sum of $225,000. On May 23, 1974, plaintiff’s attorneys notified Commercial in writing of plaintiff’s $7,000 claim, plus accrued interest and demanded *405 payment thereof. On May 29, 1974, the entire net proceeds of $190,184.80 (less $1,229.87 for adjustment) were disbursed and retained by Commercial on account of Clermont’s then outstanding indebtedness to Commercial of $228,201.18.[3]
B. CONTENTION OF PARTIES
Plaintiff contends that the moneys realized by the public auction were sufficient to produce a surplus sufficient to satisfy the $7,000 outstanding on its loan to Clermont and demands return of said $7,000 in compliance with section 9-504 (subd [1], par [c]) of the Uniform Commercial Code.
Plaintiff and 20th Century contend that "bonus” is merely another term to denote "precomputed interest” and is usurious. They maintain that to permit Commercial to retain all the proceeds of the sale would allow Commercial to collect unearned interest. If so, a sufficient surplus would remain from the public auction to satisfy plaintiffs demand for repayment of said $7,000.
Commercial contends that each loan included payments of moneys termed a "bonus” which was earned at the inception of each loan and, therefore, became a fixed obligation of the entire outstanding balance due upon acceleration thereof, denying both the fact and plaintiffs or 20th Century’s right to claim usury.[4]
Thus, Commercial contends that a debt of $228,201.18 remained unpaid at the time of the May 21, 1974 public sale, and after deducting the expenses of the sale, which left $190,184.80, leaving a $38,016 loan balance, less $1,229.87 postsale adjustments, a net loan deficiency of $36,786.51.
c. ISSUES
1. Whether a prior chattel mortgagee (Commercial) after mortgagor’s (Clermont’s) default and public auction and sale thereunder may deduct therefrom subsequently due "bonus” or charges under said chattel mortgage or is such "precomputed interest” under New York law.
2. If "precomputed interest” as above is such deductible as "commercially reasonable” under subdivision (3) of section 9-504 of the Uniform Commercial Code or subordinate to plaintiffs subsequent chattel mortgage under New York law?
*406 3. If "commercially reasonable” under subdivision (3) of section 9-504 of the Uniform Commercial Code, can plaintiff, as a subsequent chattel mortgagee, recover as surplus under section 9-504 (subd [1], par [c]) of the Uniform Commercial Code under New York law?
D. APPLICABLE LAW

1. ’’Bonus” or ’’Precomputed Interest”?

Security agreements are evaluated by the same principles of construction and interpretation as any contract. This requires the court to construe the security agreement according to the intent of the parties. The parties are deemed to have intended the security agreement provisions to mean what is evident from the language employed.
Section 3-118 of the Uniform Commercial Code states the rules of construction to be applied to negotiable instruments. Section 3-118 provides: "The following rules apply to every instrument * * * (d) Unless otherwise specified a provision for interest means interest at the judgment rate at the place of payment from the date of the instrument, or if it is undated from the date of issue.” (L 1962, ch 553, eff Sept. 27, 1964.)
Commercial drafted the security agreements in issue. The term "interest”, not "bonus”, appears on the face of the agreements between Commercial and Clermont except for the accounts receivable agreement wherein the term "charge” is used. Furthermore, Commercial’s ledger sheet for this loan is clearly printed in block lettering: "1/20733 per day interest.”
Therefore, the security agreements, on their face, indicate that the fees imposed to cover the expenses of these loans were interest charges and not "bonuses”. Any doubts or ambiguities as to the meaning of any contract terms must be resolved in favor of the debtor as against the secured party who drafted the instrument. (Mars Assoc. v Health & Mental Hygiene Facilities Improvement Corp., 47 AD2d 5, affd 38 NY2d 878; 67 Wall St. Co. v Franklin Nat. Bank, 37 NY2d 245; General Venture Capital Corp. v Wilder Transp., 26 AD2d 173.)
The court looks to substance, not form, to determine the function performed by the "bonus” claimed by Commercial in these loan agreements. Renaming a term does not change its basic function.
"This court is not bound to categorize this transaction by applying blinders to its eyes and merely viewing the language *407 used in the agreement. No case is to be judged by what the parties appear to be or represent themselves to be doing, but the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings”. (Tuition Plan v Zicari, 70 Misc 2d 918, 921; Cusick v Ifshin, 70 Misc 2d 564, affd 73 Misc 2d 127.)
Gerald Grossman, Commercial’s secretary, treasurer, vice-president and house counsel, testified that a bonus represents the monetary compensation Commercial receives for lending moneys and includes both costs and profits. The moneys received by Commercial as "bonus” moneys are the same as those ordinarily termed "interest” payments. Verbal gymnastics cannot be used to turn interest payments into a "bonus” or capital payment in order to evade the law. (Cusick, supra, p 568.)
However, Commercial further contends that it was entitled to collect a charge (bonus) for the use of its moneys by Clermont at the outset of each loan. Defendant Commercial refers to these monthly "bonus” moneys as deferred income and asserts the matter is one solely involving its internal bookkeeping system.
This argument was rejected by the court in Franklin Nat. Bank of Long Is. v Capobianco (51 Misc 2d 30), when the court denied the creditors’ contention that discounted interest is not rebatable to a defaulting creditor. The court stated (p 33): "an insolvent debtor * * * gives little heed to the bookkeeping practices of his erstwhile creditor, and cares not whether the item be carried as principal or interest.”
All of the parties rely on the testimony of Gerald Grossman to justify their positions. After review of Gross-man’s testimony, the court finds, in fact and law, such supports the allegations of the plaintiff and defendant 20th Century that the term "bonus”, as utilized by Commercial, means "interest”.
Whatever terminology may be employed by defendant Commercial, the function of the moneys collected by Commercial from Clermont as a surcharge for the loans remains the same. Whether labeled "bonus” or "interest”, the moneys provided earned income on the loans for Commercial.

*408
2. Precomputed Interest "Commercially Reasonable” under New York Uniform Commercial Code?

Under New York law, as a lender, Commercial is not entitled to collect unearned interest on moneys it loaned to Clermont. Excess interest is in the nature of a penalty and cannot be retained, except by a subsequent agreement between the parties. (Atlas Fin. Corp. v Ezrine, 42 AD2d 256; Berman v Schwartz, 59 Misc 2d 184; Jamaica Sav. Bank v Halimi,76 Misc 2d 939; Banking Law, § 108, subd 4, par [e]; 32 NY Jur, Interest and Usury, § 61.)
Berman v Schwartz (supra) was an action to recover surplus moneys following the sale by the holder of a chattel mortgage of equipment that was collateral for the indebtedness. Total interest charges had been divided equally and included in 36 notes that evidenced the debt. The security agreement contained an acceleration clause in the event of default. The court held that the rule is that unearned interest must be deducted upon acceleration and payment of the debt prior to maturity.
In Berman (supra) the court held (p 186): "The mere fact that the total interest is computed in advance and added in equal proportions to and included in the face amount of the notes, as a form of prepaid interest or discount, does not change the equitable principle that the unearned part of the interest must be deducted upon acceleration and payment of an indebtedness prior to maturity”.
Similarly, in Atlas Fin. Corp. v Ezrine (supra) due to acceleration of indebtedness on default, the principal ceased to be at risk some time prior to the time contemplated by the contract; therefore, the debtor is entitled to credit for the portion of the notes representing unearned interest from and after the date of acceleration. The creditor is entitled to only the unpaid balance and matured interest up to the time of payment. (See, also, Franklin Nat. Bank v Capobianco, 51 Misc 2d 30, supra.)
Clermont’s entire indebtedness to Commercial was accelerated by Clermont’s default. This indebtedness encompassed the unpaid balance of the principal and the matured interest at the time of default and does not include any unearned future interest.
In article 3 of the Uniform Commercial Code, which governs negotiable instruments, subdivision (1) of section 3-604 states: "Any party making tender of full payment to a holder when *409 or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney’s fees.”
Under the Uniform Commercial Code and case law, a creditor will not be permitted to collect unearned interest. Since Commercial is not entitled to collect unearned interest or "bonus” moneys from Clermont, it must apply the proceeds of the May 21, 1974 auction to satisfy the claims of subordinate security interests of" Bostwick and account to 20th Century for the surplus, if any.
The disposition of the proceeds of the sale of collateral by a secured party is governed by subdivision (3) of section 9-504 of the Uniform Commercial Code, providing that "every aspect of the disposition * * * must be commercially reasonable. ” (Emphasis added.) The proceeds are to be applied toward the reasonable expenses of the sale, then to satisfy the indebtedness secured by the primary security interest and then to satisfy the indebtedness secured by any subordinate security interest in the collateral, provided that certain procedural requirements are fulfilled. The secured party must account to the debtor for any surplus. (See McKinney’s Cons Laws of NY, Official Comment No. 3, Book 62½, Uniform Commercial Code, § 9-504, subd [2].)
No objections have been raised by any of the parties as to } the commercial reasonableness of the May 21, 1974 sale of) compliance with proper procedure under the Uniform Com-j mercial Code exception.

3. Recoverable "surplus” under ^section 9-504 (subd [1], par [c]) of the Uniform Commercial Code.

Plaintiff demanded herein payment of $7,000, with accrued interest from the proceeds of the auction, following a gross bid of $225,000 in a letter dated May 23, 1974, six days prior to the May 29, 1974 distribution of the proceeds.
Under section 9-504 (subd [ljj, par [c]) of the Uniform Commercial Code, subordinate spefured interests shall be satisfied, if any surplus is available, "if written notification of demand therefor is received before distribution of the proceeds is completed, but only to the extent of the proceeds undistributed when such notification is received.”
Accordingly, the court finds, in fact and law, that plaintiff is entitled to receive its portion of the surplus proceeds since distribution was not completed at that date.
The question remains whether any surplus remains after *410 the May 21, 1974 sale. At trial on direct examination, Gerald Grossman testified that if the 16% per annum charge on loan 2 was defined as "interest” and not as a. "bonus”, then: "Were this to be a loan on which interest were payable on the unpaid balance and were we to get sixteen percent on the unpaid balance until date of payment after crediting all the payments that were received and taking the date as May 30, 1974, the date after the auction when we received the auctioneer’s check, there would be a credit of $28,500. in favor of Clermont Operating Corp.”
Clearly, a sufficient surplus does exist to satisfy the debt owed to Bostwick by Clermont.
Commercial contends that its method nf calculating "bonus” moneys to be added to each loan at its inception is the "rule of 78” and that the rule has received the approval of the New York Court of Appeals; The "rule of 78” refers to the method of calculation laid down in section 108 (subd 4, par [e]) of the Banking Law.
"(e) A borrower may prepay the loan in full or, with the consent of the bank or trust company, may refinance the loan. In the event of such prepayment or refinancing, the bank or trust company shall refund: (1) the unearned portion of the interest previously deducted to the borrower to the ratable extent at least that the sum of the unpaid balances of the loan scheduled at regular periodic intervals of not more than one imonth from the date of repayment to and including the maturity of the final installment bears to the sum of all the unpaid balances of the loan scheduled ¿d like periodic intervá.ls from its inception to and including the maturity of the final'installment; provided,' however, that if the amount of interest previously deducted (I) was less than ten dollars, no refund shall be required; or (ii) exceeded the sum of ten dolías and the earned interest is less than that amount, the bank or trust company may retain suffi an additional amount as will bring the earned interest'to the sum of ten dollars and refund the remainder, and provided1 further, that unless the loan is refinanced, no refund shall be required if it amounts to less than one dollar; and (2) if a charge was made to the borrower for premiums for insuring the borrower under a group life insurance policy, or under a group health, group accident or group health and accident insurance policy, the excess of the charge to the borrower therefor over the premiums paid or payable by the bank or trust company, if such *411 premiums were paid or payable by the bank or trust company periodically, or the refund for such insurance premium received or receivable by the bank or trust company, if such premium was paid or payable in a lump sum by the bank or trust company, provided that no such refund shall be required if it amounts to less than one dollar.
"In the event (i) the maturity of the loan is accelerated due to the default of the borrower or otherwise and judgment is obtained, or (ii) repayment is made pursuant to any such insurance policy, the borrower or his legal representative, as the case may be, shall be entitled to the same refund as if the loan had been prepaid in full on the date of acceleration or repayment.” (Added L 1957, ch 597, § 1, eff April 17, 1957, amd L 1958, ch 683; L 1959, ch 583, eff Oct. 1, 1959; L 1975, ch 335; L 1976, ch 621, § 2, eff Sept. 19, 1976.)
Section 108 (subd 4, par [e]) of the Banking Law enables the debtor to obtain a refund of unearned interest from the creditor in the event of voluntary prepayment or accelerated payment created by the debtor’s default. However, the method of calculation utilized is based upon an original loan agreement provision that allocated interest payments in decreasing amounts as the principal was repaid. Commercial chose to receive its deferred income in equal portions over the life of the loans, and therefore, this method of calculating refund or surplus is inappropriate.
In support of its contentions, Commercial cites a number of cases that involve voluntary prepayment of outstanding loans. These cases can all be distinguished from the facts of this case. The law permits the payment of additional moneys in consideration for the right to prepay a loan, because the moneys are deemed part of a subsequent contract between the parties. (Lyons v National Sav. Bank of City of Albany, 280 App Div 339; Feldman v Kings Highway Sav. Bank, 278 App Div 589, affd 303 NY 675.) However, this case involves no voluntary prepayment, and there are, in fact, no prepayment provisions in any of the security agreements between Clermont and Commercial.
Usury is not involved, although raised by Bostwick and 20th Century herein, as a corporation borrower may pay up to 25% per annum interest (Penal Law, § 190.40) may not generally interpose the defense of usury (General Obligations Law, § 5-521). Usury is a personal defense to a noncorporate individ *412 ual not raisable by plaintiff, subsequent chattel mortgagee. (General Obligations Law, § 5-513.)
Finally, the evidence appears uncontroverted that plaintiff is entitled to recover, as against 20th Century, as guarantor of Clermont’s indebtedness to plaintiff.
E. CONCLUSION
For the foregoing reasons, the court finds, in fact and law, in view of the parties’ intent and all of the surrounding facts and circumstances, that plaintiff sustained its burden of proof by a fair preponderance of the credible evidence, as to both defendants, Commercial and 20th Century, who are jointly and severally liable to plaintiff in the total sum of $7,000 plus interest, costs and disbursements. Accordingly, plaintiff may enter judgment in the total sum of $7,000 as against both defendants, Commercial Trading Company, Inc., and 20th Century Industries, Inc., plus interest from the 29th day of May, 1974, costs and disbursements and without prejudice to any and all rights and remedies the codefendants may have against one another.

. Whether such coincides with or is superseded by any or all of the said three loans is unclear on the record since curiously no promissory notes on any loans were offered into evidence.

. "Interest”: for loans Nos. 1 & 2 and "charge” for loan No. 3 are the terms used in testimony or documents in evidence while defendant Commercial’s memoranda of law use the term "bonus”.

. The total outstanding indebtedness of the above three loans, including "interest” or "charges” or "bonus” was $228,201.18.

. Neither plaintiff nor 20th Century alleges usury as an affirmative defense or cross claim under CPLR 3018 (subd [b]).