**AARDWOOLF CORPORATION, formerly known as Spectrum Development Company, Inc., Plaintiff–Appellant,**

v.

**NELSON CAPITAL CORPORATION, Defendant–Appellee.**

**No. 1264, Docket 88–7192.**

United States Court of Appeals, Second Circuit.

Submitted June 8, 1988.

Decided Nov. 4, 1988.

Robert H. Golden, Cammerzell & Golden, Princeton, N.J., Jonathan M. Plasse, Goodkind, Wechsler, LaBaton & Rudoff, New York City, of counsel, for plaintiff-appellant.

Edward V. Walsh, Jr., Lawrence, Ciovacco & Walsh, Hempstead, N.Y., of counsel, for defendant-appellee.

Before VAN GRAAFEILAND and MAHONEY, Circuit Judges, and NEVAS, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Spectrum Development Company, Inc. (presently Aardwoolf Corporation) appeals

---

* The Honorable Alan H. Nevas of the United States District Court for the District of Connecticut, sitting by designation.

from a summary judgment of the United States District Court for the Eastern District of New York (Korman, J.) dismissing Spectrum's complaint against Nelson Capital Corporation. Spectrum's action sought recovery of a proportionate amount of prepaid interest on a long-term loan that allegedly was unearned because of prepayment of the principal balance. For the reasons hereafter assigned, we reverse.

Spectrum is a "small-business concern", as that term is defined in the Small Business Investment Act of 1958. 15 U.S.C. §§ 632, 662(5). Nelson is a "small business investment company" operating under license from the Small Business Administration. *See* 15 U.S.C. § 681. On August 18, 1977, Nelson agreed to loan Spectrum $933,000, repayable in monthly installments over a period of fifteen years. However, although Spectrum was required to execute a note in the face amount of $933,000, the amount Spectrum actually received was $800,062.38. The difference in these two figures was explained in the Loan Agreement as follows:

> The Promissory Note shall be dated the date hereof and shall require monthly payments on account of principal and interest (at the rate of twelve (12%) percent per annum on the unpaid balance) as therein provided. However, the Loan is to be discounted by $132,937.62 providing net proceeds to the Company [Spectrum] of $800,062.38 and an effective rate of interest on the loan of fifteen (15%) percent per annum.

The Loan Commitment provided that prepayment without penalty could be made and that the agreement and the performance of the parties thereunder would be construed and interpreted in accordance with the laws of New York.

In November 1983, Spectrum prepaid the balance owing on the loan. It then sought repayment of a proportionate share of the discounted interest based on the fact that Nelson had recovered its entire principal some nine years sooner than had been anticipated when the $132,937.62 discount was made. In the suit which followed Nelson's refusal to pay, the district judge granted Nelson's motion for summary judgment on the ground that he could find nothing in either the contract or the law of New York which justified recovery by Spectrum. We view the New York law differently.

■ At the outset, we lay to rest any question there may be as to the nature of the so-called "discount". It was, as the parties concede, the taking of interest in advance, a practice as old as the proverbial hills. *See Evans v. National Bank*, 251 U.S. 108, 113, 40 S.Ct. 58, 59–60, 64 L.Ed. 171 (1919); *City Bank v. Bruce*, 17 N.Y. 507, 515 (1858); *Miller v. Discount Factors, Inc.*, 1 N.Y.2d 275, 280–82, 152 N.Y.S.2d 273, 135 N.E.2d 33 (1956). When, as here, the discounted interest is intended to cover the full term of the loan, part of it becomes unearned if for any lawful reason the loan does not run full term. If the unearned interest were not refunded, the asserted interest rate of fifteen percent per annum, based on a fifteen-year commitment, actually would be substantially higher. In our view, New York legislation and judicial pronouncements demonstrate a consistent intent to deny a creditor the right to charge or retain interest that is unearned.

From the standpoint of a debtor, the traditional favorite of both legislatures and courts, there is little practical difference between the right to recover unearned interest following lawful prepayment of principal and the right to recover unearned interest following lawful acceleration by the creditor. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 562, 569–70, 100 S.Ct. 790, 795, 798–99, 63 L.Ed.2d 22 (1980); *Johnson v. McCrackin–Sturman Ford, Inc.*, 527 F.2d 257, 269 n. 28 (3d Cir.1975). New York does not distinguish between these two rights.

Section 305 of the New York Personal Property Law, which deals with Motor Vehicle Installment Contracts, provides for the refund credit of a portion of the "credit service charge" regardless of whether the buyer prepays or the loan is accelerated by reason of the buyer's default. A similar provision is contained in section 408 of the New York Personal Property Law, which

deals with Retail Installment Sales. Section 108.4(e) of the New York Banking Law, which authorizes prepayment of personal bank loans, requires the bank to refund, in a manner prescribed in the statute, "the unearned portion of the interest previously deducted." Although the Uniform Consumer Credit Code, promulgated by the National Conference of Commissioners on Uniform State Laws, has not been adopted in New York, section 3.210(8) of that Code also contains rebate requirements that apply regardless of whether there has been a voluntary prepayment or an acceleration of the indebtedness on default.

New York cases that are not governed by the above statutes nonetheless apply similar equitable principles when dealing with unearned interest. In *New York Water Service Corp. v. Newstrand Realty Corp.*, 280 A.D. 322, 113 N.Y.S.2d 769 (1952), a mortgage provided that "the mortgagor or any subsequent owner may prepay this mortgage in whole or in part at any time on ten (10) days' written notice to the mortgagee". *Id.* at 323, 113 N.Y.S.2d 769. The mortgagor prepaid the principal balance and accrued interest then owing on the mortgage and secured a satisfaction from the mortgagee "without prejudice to [the mortgagee's] claim for subsequent interest." *Id.* When the mortgagee thereafter sued for the balance of the interest, summary judgment was granted in favor of the mortgagor.

In *Berman v. Schwartz*, 59 Misc.2d 184, 186, 298 N.Y.S.2d 185 (1968), *aff'd on opinion below*, 33 A.D.2d 673, 305 N.Y.S.2d 1019 (1969), and quoted with approval in *Atlas Financial Corp. v. Ezrine*, 42 A.D.2d 256, 258, 345 N.Y.S.2d 36 (1973), the court said:

> The mere fact that the total interest is computed in advance and added in equal proportions to and included in the face amount of the notes, as a form of prepaid interest or discount, does not change the equitable principle that the unearned part of the interest must be deducted upon acceleration and payment of an indebtedness prior to maturity.

*See Bostwick–Westbury Corp. v. Commercial Trading Co.*, 94 Misc.2d 401, 404 N.Y. S.2d 968 (1978), where the court described "excess interest" as being in the "nature of a penalty" and concluded that "[u]nder the Uniform Commercial Code and case law, a creditor will not be permitted to collect unearned interest." *Id.* at 408–09, 404 N.Y.S.2d 968. *See also Davlick Constr. Corp. v. Krone Associates, Inc.*, 40 Misc.2d 96, 242 N.Y.S.2d 647 (1963).

The likelihood that a New York court, if asked to rule herein, would follow the lead of the above cases is strongly enhanced by the fact that the loan at issue was made by a Licensee of the Small Business Administration which was required to comply with "all applicable regulations" under the Small Business Investment Act. *See United States v. Cape Fear Capital Corp.*, 286 F.Supp. 135, 136 (M.D.Pa.1968); 15 U.S.C. § 687(c); 13 C.F.R. § 107.1. The regulations define "Cost of Money" as the "total consideration given to a Licensee ... by, or for the benefit of, the Small Concern, such as interest, discounts ... and any other thing of value given for financings ...", 13 C.F.R. § 107.3, and limit the maximum annual Cost of Money to fifteen percent or any lower rate prescribed by local law, *id.* § 107.302(d). The regulations also provide that "[v]oluntary prepayment shall be permitted at any time, but a reasonable prepayment penalty may be agreed upon." *Id.* § 107.301. However, if a Licensee imposes a front-end charge, the sum of interest, unearned charges, and prepayment penalties cannot exceed the Cost of Money limitation, and, in the event of prepayment, any excess remaining in a front-end charge must be returned to the borrower, *id.* § 107.3. The fifteen percent "effective rate of interest" in the instant case complies with the Cost of Money limitation in the regulations. The failure to return the excess resulting from the prepayment does not.

Although the Small Business Act does not provide a debtor such as Spectrum with a private cause of action for the above-described violation, *see Royal Services, Inc. v. Maintenance, Inc.*, 361 F.2d 86, 92 (5th Cir.1966), this does not mean that the pertinent Small Business Administration regulations would have no relevance to a New York court. There is nothing in the

Small Business Act that would prevent a New York court from looking to the Act for standards to apply in fashioning or applying New York's own common law. *See Iconco v. Jensen Constr. Co.*, 622 F.2d 1291, 1296–99 (8th Cir.1980); *Tectonics, Inc. v. Castle Constr. Co.*, 753 F.2d 957, 960–64 (11th Cir.), *cert. denied*, 474 U.S. 848, 106 S.Ct. 143, 88 L.Ed.2d 118 (1985); *see also Hernstadt v. Programs for Television, Inc.*, 36 Misc.2d 628, 232 N.Y.S.2d 683 (1962). This is particularly true where, as here, the standards of the Act merely reinforce common-law State standards already in existence.

In short, we are satisfied that a New York court applying New York law would not permit Nelson to retain the full amount of the discounted interest but instead would require that the interest be prorated. We conclude that the district court should have done the same. Since the district court did not reach the question as to the proper formula to use in arriving at a proper refund, we will not undertake to do so in the first instance. We reverse the grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.