07-1551-cv
Capital Ventures v. Republic of Argentina

# UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: November 10, 2008

Decided: January 13, 2009
Errata filed: March 19, 2009)

Docket No. 07-1551-cv

_____

CAPITAL VENTURES INTERNATIONAL,

*Plaintiff-Appellant,*

—v.—

REPUBLIC OF ARGENTINA,

*Defendant-Appellee.*

_____

B e f o r e : SOTOMAYOR, KATZMANN, and HALL, *Circuit Judges.*

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, *J.*) dismissing, for lack of subject matter jurisdiction, those claims of plaintiff-appellant Capital Ventures International that relate to bonds issued by defendant-appellee Republic of Argentina under German law, and denying Capital Ventures International's request for statutory prejudgment interest on unpaid interest payments that would have come due on United States dollar denominated bonds issued by the Republic after the acceleration of those bonds. We affirm in part and vacate in part, finding that there is subject matter jurisdiction over the claims relating to the German bonds because Argentina explicitly waived its sovereign immunity to suit in United States courts on those claims, and that the district court correctly determined that no interest payments became due on the United States bonds after they had been accelerated.

_____

Counsel for Plaintiff-Appellant:   M. NORMAN GOLDBERGER, Hangley Aronchick Segal & Pudlin, Philadelphia, P.A.

Kenneth G. Roberts, Jennifer F. Beltrami (*of counsel*), Wolf, Block, Schorr and Solis-Cohen LLP, New York, N.Y.

Counsel for Defendant-Appellee:   CARMINE D. BOCCUZZI (Jonathan I. Blackman, *of counsel*), Cleary Gottlieb Steen & Hamilton LLP, New York, N.Y.

_____

KATZMANN, *Circuit Judge*:

This case calls upon us in principal part to determine whether the Republic of Argentina explicitly waived its sovereign immunity from suit in the United States as to claims relating to bonds issued by Argentina under German law.

Plaintiff-appellant Capital Ventures International ("CVI") appeals from a judgment of the United States District Court for the Southern District of New York (Griesa, *J.*) dismissing, for lack of subject matter jurisdiction, those of CVI's claims that relate to bonds issued by defendant-appellee Republic of Argentina ("Argentina" or "the Republic") under German law, and denying CVI's request for statutory prejudgment interest on unpaid interest payments that would have come due on United States dollar denominated bonds issued by the Republic after the acceleration of those bonds. We find that there is subject matter jurisdiction over the claims relating to the German bonds because Argentina explicitly waived its sovereign immunity to suit in United States courts on those claims, and that the district court correctly determined that no interest payments became due on the United States bonds after they had been accelerated. Accordingly, we affirm in part and vacate in part.

2

FACTUAL BACKGROUND

CVI is the beneficial owner of certain bonds issued by the Republic of Argentina. One group of the bonds owned by CVI is governed by German law, and these bonds are denominated in Deutsche Marks and Euros ("the German bonds"). Each German bond was issued pursuant to its own offering circular. Section 13 of the offering circulars provides in part:

> (3) The Republic hereby irrevocably submits to the non-exclusive jurisdiction of the District Court (Landgericht) in Frankfurt am Main and any federal court sitting in the City of Buenos Aires as well as any appellate court of any thereof [sic], in any suit, action or proceeding against it arising out of or relating to these Bonds. The Republic hereby irrevocably waives – to the fullest extent it may effectively do so – the defense of an inconvenient forum to the maintenance of such suit or action or such proceeding and any present or future objection to such suit, action or proceeding whether on the grounds of venue, residence or domicile. The Republic agrees that a final judgment in any such suit, action or proceeding in the courts mentioned above shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or any other method provided by law.

> (4) To the extent that the Republic has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise), with respect to itself or its revenues, assets or properties, the Republic hereby irrevocably waives such immunity in respect of its obligations under the Bonds to the extent it is permitted to do so under applicable law.[1]

The remainder of the bonds owned by CVI are denominated in United States dollars ("the U.S. bonds") and were issued pursuant to a Fiscal Agency Agreement ("FAA"). The FAA provides that Argentina will "pay interest" on the principal of the U.S. bonds "until the principal . . . is paid." It also sets forth periodic dates on which interest is due. The FAA contains an acceleration provision, which does not specify whether or not interest is due on the periodic dates

---

[1] This language is taken from the Offering Circular governing the 8% Deutsche Mark Bonds of 1997/2009. The parties agree that every offering circular contains substantially identical provisions, insofar as is relevant to this appeal.

3

after any acceleration.[2]

In December 2001, Argentina declared a moratorium on the payment of principal and interest on its foreign debt and stopped paying principal and interest on the bonds at issue here. In response to the default, on various dates in 2005 and 2006, CVI accelerated the bonds it owned, making the principal immediately due.

The instant lawsuit was filed in the Southern District on April 25, 2005. After various preliminary proceedings, the district court granted summary judgment in favor of CVI on the claims related to the U.S. bonds on May 17, 2006. Subsequently, on February 15, 2007, the district court held an oral argument on various open issues, including Argentina's motion to dismiss the claims related to the German bonds for lack of subject matter jurisdiction and CVI's request for statutory prejudgment interest on certain interest payments it claimed were due after acceleration of the U.S. bonds.

At the oral argument, the district court ruled that it lacked subject matter jurisdiction over the claims relating to CVI's German bonds because Argentina was entitled to sovereign immunity with respect to those claims; the district court accordingly dismissed the German bond claims. Construing section 13(3) and (4) of the offering circulars, the district court concluded that Argentina had not explicitly waived its sovereign immunity in U.S. courts in section 13. Instead, it held that subsection 3 was a limited submission to the jurisdiction of courts in Frankfurt and Buenos Aires. The district court reasoned that "whatever [subsection 4] means it should not be read as reading out of this instrument the reference to Frankfurt and the city of

---

[2] This provision governs the acceleration of the payment of principal upon certain events of default.

4

Buenos Aires." Accordingly, while acknowledging that the language of subsection 4 was "very broad," the district court ultimately held that "where there is an expressed grant of jurisdiction in specific places . . . a general waiver of sovereign immunity [such as in subsection 4] does not mean that . . . suit can be brought any place in the world." Having found that Argentina did not waive its sovereign immunity to suit in U.S. courts, the district court dismissed the German bond claims and concomitantly denied CVI's motion for summary judgment on those claims.

As to CVI's request for prejudgment interest, the district court found that the FAA did not require the continued payment of interest after the principal was accelerated, because the act of accelerating the principal so that "[i]t is due now" is inconsistent with interest that "continue[s] to accrue quarterly" where the contract does not specifically provide that contractual interest continues to accrue. Accordingly, the district court only awarded prejudgment interest, at the contractual rate, for the entire amount of the principal after the date of acceleration and for interest payments that were due but unpaid prior to acceleration.

On March 16, 2007, the district court entered final judgment reflecting its rulings at the February 15, 2007 oral argument. This appeal followed.

## DISCUSSION

On appeal, CVI challenges both the dismissal of the claims related to the German bonds and the denial of prejudgment interest on interest payments that would have come due after acceleration of the U.S. bonds.

A.     Sovereign Immunity

1.     Background Law and Standard of Review

5

The Foreign Sovereign Immunities Act ("FSIA") "is the sole source for subject matter jurisdiction over any action against a foreign state." *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007) (internal quotation marks omitted); *see* 28 U.S.C. §§ 1330(a), 1604. The FSIA provides that foreign sovereigns are immune from suit unless a specific exception to sovereign immunity applies. *Id.* § 1604. One such exception is that a foreign state is not immune from suit "in any case . . . in which the foreign state has waived its immunity either explicitly or by implication."[3] *Id.* § 1605(a)(1). The term "explicit," in this context, takes its normal meaning of "clear and unambiguous." *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d 47, 49 (2d Cir. 1982) (interpreting 28 U.S.C. § 1610(d)). The purpose of an "explicit" waiver requirement "is to preclude inadvertent, implied, or constructive waiver in cases where the intent of the foreign state is equivocal or ambiguous." *Id.*

"On appeal from a dismissal for lack of subject matter jurisdiction, we review the district court's legal conclusions de novo . . . ." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (per curiam). The interpretation of a contract is a legal question which is also reviewed de novo. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

---

[3] Congress has provided that personal jurisdiction over a foreign state exists when the FSIA permits a suit against that state and the service of process requirements set forth in 28 U.S.C. § 1608 have been satisfied, *see* 28 U.S.C. § 1330(b), although even in the FSIA context the requirements of due process must be satisfied before a court may exercise personal jurisdiction. *See Texas Trading & Mill. Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981). It should be noted, however, that this Court recently heard oral argument on the question of whether *Texas Trading* remains good law. *See Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, No. 07-1815-cv (2d Cir. argued Oct. 27, 2008). We need not address the issue of personal jurisdiction here, as Argentina has not raised it before us and the district court did not consider it. We express no opinion as to whether Argentina may raise the issue on remand or whether Argentina has waived any objection to personal jurisdiction by failing to raise it before the district court.

2. Discussion

In the offering circulars, Argentina explicitly waived its sovereign immunity to suit in U.S. courts on claims related to the German bonds. Section 13(4) of the offering circulars provides that, "[t]o the extent that the Republic has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process . . . , the Republic hereby irrevocably waives such immunity in respect of its obligations under the Bonds to the extent it is permitted to do so under applicable law." This provision clearly and unambiguously waives Argentina's "immunity (sovereign or otherwise)" in "*any* court." This clear language satisfies the FSIA's requirement of an "explicit" waiver.

Argentina advances the argument that section 13(4), read in conjunction with section 13(3), merely allows for judgments obtained pursuant to section 13(3) to be enforced in other courts. However, the language of subsection 4 is not so limited. Subsection 4 refers to "any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise)," language that contemplates actions other than those to enforce judgments. Further, subsection 3 ends with the provision that "a final judgment in any such suit . . . in the courts mentioned above . . . may be enforced in other jurisdictions by suit on the judgment or any other method provided by law." If the Republic's interpretation of subsection 4 were adopted, this last sentence in subsection 3 would render subsection 4 superfluous, a result that should be avoided.[4] *See United States v. Hamdi*, 432 F.3d 115, 123 (2d Cir. 2005). Further, if subsection 4 were intended to discuss enforcement in other jurisdictions,

_____

[4] We note that the offering circulars are governed by German law. The parties have not presented us with anything to suggest that German law would alter the essential analysis. Indeed, they have not cited any German law with respect to any aspect of this case.

we would expect that the same terms in the last sentence of subsection 3 would be repeated in subsection 4—but they are not. Accordingly, we do not read section 13(4) as applying only to the enforcement of judgments.

Argentina also argues that reading section 13(4) as a waiver of sovereign immunity in any court renders subsection 3 superfluous, a result which, as just discussed, is disfavored. *See id.* According to Argentina, under such a reading Argentina has "agree[d] to jurisdiction in Germany and Argentina" in subsection 3 and also "agree[d] to jurisdiction everywhere" in subsection 4. Of course, such an interpretation of section 13(4) would render subsection 3 superfluous—but that is not what subsection 4 says. Subsection 4 is a waiver of Argentina's "immunity (sovereign or otherwise)," but it does not waive other objections to suit that Argentina might have, such as objections based on lack of personal jurisdiction, improper venue, or forum non conveniens. Section 13(3), on the other hand, provides that Argentina "submits to the non-exclusive jurisdiction" of the courts in Frankfurt and Buenos Aires as well as "waives . . . the defense of an inconvenient forum . . . and any . . . objection . . . on the grounds of venue, residence or domicile." It is thus clear that reading subsection 4 as a waiver of sovereign immunity in any court does not render subsection 3 superfluous.

Argentina also presses the argument that the case law reveals a requirement that, to be explicit, a waiver must contain a reference to the United States or a specific jurisdiction within the United States. We do not find such a requirement in the cases. Of course, a specific reference to the United States can be helpful in determining that a waiver meets the FSIA's requirement of explicitness, *see, e.g.*, *Proyecfin de Venez., S.A. v. Banco Indus. de Venez., S.A.*, 760 F.2d 390, 393 (2d Cir. 1985) (finding an explicit waiver obvious where the waiver mentioned New York courts), but the statutory requirement is only that the waiver be "explicit."

8

There can be explicit waivers without a reference to the United States, as the waiver of immunity in "any court" in this case illustrates. *See also Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004) (finding an explicit waiver under the FSIA where a contract read "[t]he Congo hereby irrevocably renounces to claim any immunity during any procedure relating to any arbitration decision handed down by an Arbitration Court"); *World Wide Minerals, Ltd. v. Republic of Kazakstan*, 296 F.3d 1154, 1162 & n.13 (D.C. Cir. 2002) (finding an "express waiver[] of sovereign immunity" where the waiver said "[i]n respect of any arbitration or legal action or proceedings arising out of or in connection with this Agreement, . . . [the Kazakhstan State Committee] hereby irrevocably agrees not to claim and hereby irrevocably waives . . . immunity for itself and the assets of the Republic of Kazakstan to the full extent permitted by the laws of such jurisdiction"). Any other result would stray from the plain meaning of the statutory language. *See United States v. Santos*, 541 F.3d 63, 67 (2d Cir. 2008) ("Statutory interpretation always begins with the plain language of the statute, assuming the statute is unambiguous." (internal quotation marks omitted)).

Despite Argentina's argument, *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), does not require a contrary result. In *Amerada Hess*, the Supreme Court stated that it did not "see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *Id.* at 442-43. Argentina would have us read this language as a requirement that, for a waiver to satisfy the FSIA's explicitness requirement, it must mention the United States in some way. That is not the holding of *Amerada Hess*. The international agreements at issue in *Amerada Hess* were the Geneva Convention on the High Seas, Apr. 29, 1958, 13 U.S.T. 2312, and the Pan American Maritime

9

Neutrality Convention, Feb. 20, 1928, 47 Stat. 1989—neither of which mentions waiving

sovereign immunity at all, let alone in the United States.  The offering circulars at issue here,

which are contracts between Argentina and the bondholders, are far removed from multi-party

international agreements and do discuss waiver of sovereign immunity to suit in *any* court,

thereby indicating "waiver of immunity to suit in United States courts."  *Amerada Hess*, 488 U.S.

at 442-43.  Accordingly, *Amerada Hess* does not control the outcome here.

There is likewise no support in our cases for Argentina's suggestion that the mention of

specific, non-United States jurisdictions in subsection 3 of the offering circulars precludes a

finding that Argentina waived its sovereign immunity to suit in the United States.  Of course it is

true that there will be cases in which, when a document mentions a non-U.S. jurisdiction, there

will be no explicit waiver for FSIA purposes because it will be clear that there is no intent to

waive sovereign immunity in United States courts.  *See*, *e.g.*, *Eaglet Corp. v. Banco Cent. De

Nicar.*, 839 F. Supp. 232, 234 (S.D.N.Y. 1993) (finding no explicit waiver where jurisdictional

clause stated "[t]his Agreement is governed by English law and therefore BCN submits to the

nonexclusive jurisdiction of the English High Court of Justice"); *Atl. Tele-Network Inc. v.

Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 133 (D.D.C. 2003) (finding that a broad, non-

geographically limited waiver of immunity, when "juxtapos[ed] immediately below a

choice-of-law selection clause (specifying the law of Guyana) and above a forum-selection clause

(specifying the courts of Guyana)," does not waive immunity in the United States).  It is not true,

however, that the mere mention of a non-U.S. jurisdiction will preclude a finding of waiver,

because the statute requires only that the waiver be "explicit."  As the waiver at issue here

demonstrates, a waiver of sovereign immunity can be explicit even when other provisions of the

document are applicable only to specific, non-United States jurisdictions.

Accordingly, because we find that Argentina explicitly waived its sovereign immunity to suits in the United States relating to the German bonds, we reverse the district court's dismissal of CVI's German bond claims.[5] In addition, because it is clear from the transcript of the proceeding before the district court that CVI's motion for summary judgment on the German bond-related claims was denied only because the district court dismissed those claims, we vacate the denial of CVI's summary judgment motion, so that the district court can consider, in the first instance, whether or not summary judgment would be appropriate on those claims.

B.      Prejudgment Interest

Under New York C.P.L.R. § 5001, a creditor is entitled to prejudgment interest on all sums due, as of the date they became due. N.Y. C.P.L.R. § 5001; *see also Spodek v. Park Prop. Dev. Assocs.*, 759 N.E.2d 760, 762 (N.Y. 2001) (holding that "CPLR 5001(a) permits a creditor to recover prejudgment interest on unpaid interest and principal payments awarded from the date each payment became due"). While awards of interest are generally discretionary, "New York law does not permit the trial court to exercise any discretion where a party is entitled to [prejudgment interest] as a matter of right." *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 602-03 (2d Cir. 2003). We review the interpretation of a contract, which is a legal question, de novo. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

The parties agree that the district court correctly awarded CVI statutory prejudgment interest on the contractual interest payments that Argentina failed to make prior to acceleration of the principal of CVI's U.S. bonds, as well as on the entire amount of the principal starting on the date of acceleration. However, CVI argues that contractual interest payments continued to come

_____

[5] Because we find an explicit waiver of immunity, we do not reach CVI's arguments that other FSIA exceptions to sovereign immunity apply as well.

11

due after acceleration, and therefore that the district court should have awarded CVI statutory prejudgment interest on the post-acceleration, unpaid interest payments.

The normal consequence of acceleration is that interest payments that would have been due in the future are no longer due, because, after acceleration, the entire principal is immediately due and owing; in other words, future interest payments are "unearned" because the creditor is no longer loaning the debtor the principal. *See, e.g.*, *Aardwoolf Corp. v. Nelson Capital Corp.*, 861 F.2d 46, 47 (2d Cir. 1988) ("New York legislation and judicial pronouncements demonstrate a consistent intent to deny a creditor the right to charge or retain interest that is unearned."); *Atlas Fin. Corp. v. Ezrine*, 345 N.Y.S.2d 36, 38-39 (App. Div. 1973) (stating the "equitable principle that the unearned part of the interest must be deducted [from the amount due] upon acceleration," and reasoning in part that "by acceleration of payments upon default the principal sum ceased to be at risk some years prior to the time contemplated by the contract" (internal quotation marks omitted)); *Bostwick-Westbury Corp. v. Commercial Trading Co.*, 404 N.Y.S.2d 968, 973 (Civ. Ct. 1978) (stating that at acceleration, "indebtedness encompassed the unpaid balance of the principal and the matured interest at the time of default and does not include any unearned future interest"); *see also In re LHD Realty Corp.*, 726 F.2d 327, 331 (7th Cir. 1984) ("[A] lender may abandon or waive its claim to interest payable over a period of years . . . . [T]he lender, by its acts, may establish that it prefers accelerated payment to the opportunity to earn interest over a period of years. . . . [The lender] has voluntarily waived the unpaid interest in the expectation of accelerated payment of the remaining principal.").

The FAA that governs the U.S. bonds at issue here contains nothing to demonstrate that the parties intended to displace the normal meaning of acceleration with a concept of acceleration that allows interest to continue to come due after the principal is accelerated. CVI argues that the

FAA does mandate that interest payments continue to be due after acceleration because the FAA provides that Argentina will "pay interest" on the principal "until the principal . . . is paid." That, however, is merely a truism that is not specific enough to alter the traditional concept of acceleration. In the absence of ambiguity or a provision in the FAA specifying otherwise, acceleration should be given its normal meaning. *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) ("If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term . . . ."). To hold otherwise would allow CVI to recover interest twice on the same principal—once as statutory prejudgment interest after the date of acceleration and once as interest payments that came due after acceleration. Such an unusual result should not be inferred in the absence of clear intent in the FAA.

CONCLUSION

For the foregoing reasons, we **VACATE** the portion of the judgment of the district court dismissing the claims related to the German bonds and denying summary judgment on those claims, **AFFIRM** the remainder of the judgment, and **REMAND** for further proceedings consistent with this opinion.