JAMES A. WADDELL, Respondent, *v.* ABRAHAM GREEN-HALL, Appellant.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Contract. Question of fact.*—The question whether an agreement is an original promise, or a collateral undertaking, is for the jury, where there is a conflict of evidence.
2. *Trial. Charge.*—Where it is admitted that an agreement of some kind exists between the plaintiff and defendant, and the only question is as to the terms of that agreement, a charge that the first question is whether or not there was an agreement, submits to the jury an issue that had not been made, and is erroneous.
3. *Same.*—In such a case, the defendant is entitled to instruction that, if the jury find that the person to whom the advances were made, thereby became the debtor of plaintiff, then they must find the promise of defendant was not an original promise, but a collateral undertaking.

Appeal from a judgment entered upon a verdict.

VAN BRUNT, P. J.—The plaintiff in this action is a banker doing business under the name of John White Bank, in Key West, Fla. The defendants are wholesale dealers in cigars, doing business under the firm name of Greenhall & Co., in the city of New York. One Ramon Barrios was a cigar manufacturer at Key West who, prior to the time at which the alleged contract between the plaintiff and the defendants was entered into, had made certain shipments of cigars to the defendants, and for the amount of such shipments had drawn drafts upon the defendants, which were cashed by the plaintiff. On June 1, 1886, the defendant Zemansky was in Key West, and called upon the plaintiff at his banking-house, upon which occasion it is claimed the arrangement set forth in the complaint was made ; and the main question involved is whether the relations between the plaintiff's bank, Barrios, and the defendants were so changed that the defendants became the principal debtors,

the plaintiff making his advances to Barrios on their account, or whether Barrios still remained the debtor of the plaintiff for the advances, the defendants agreeing to accept drafts upon them for the amount of such advances as the plaintiff might make to him.

The plaintiff testified that he first met Zemansky in Key West in the early part of June, 1886 ; that he had done business with Barrios up to that time, and that Zemansky said to him that he wanted to make arrangements for controlling the goods manufactured by Barrios ; that he had some peculiar method of flavoring that seemed to give great satisfaction to customers, and he wanted to have Barrios make cigars for the firm. The witness states that he told him he had advanced all the money to Barrios that he wanted to, and then they had a conversation in reference to the safety of advancing money to him, and Zemansky said they would be responsible and pay all money advanced to Barrios for the manufacture of cigars.

Then followed some conversation in regard to the responsibility of the defendants' firm ; and then Zemansky asked again the plaintiff to continue his advances and that the defendants would pay the money advanced to Barrios, and all drafts Barrios might make on them until they should notify the plaintiff that the goods were not satisfactory. The plaintiff then said they would advance the money. Subsequently the plaintiff advanced money to Barrios, and drafts were drawn, and they having been refused acceptance or payment, this action was brought to recover the same.

Upon cross-examination the plaintiff stated that he could not testify to the exact words used in the conversation with Zemansky, but the substance was that defendants wished the plaintiff to continue advancing money to Barrios for the manufacture of cigars for them ; that he told Zemansky he could not continue advancing money unless he had some security ; that it occurred to him that he was not doing a safe business and would not continue ; and at another time that he told Zemansky that he did not wish to continue

advancing money to Barrios, and when asked to " tell the jury once more what this man said, when you state he said his firm would pay all drafts you advanced to Barrios," his answer was : " You need not be afraid ; you can advance or you may advance Barrios all the money he needs until we notify you ; we shall cash all drafts made by Barrios ; that is, until we notify you."

It further appears that none of the moneys advanced to Barrios were charged to the defendant, but that, in consequence of this conversation, the plaintiff opened an account with Barrios.

It is claimed, upon the part of the defendant, that this evidence shows that the idea that these advances were made on account of the defendants was an afterthought, and that the most that can be made out of the evidence is that Zemansky promised to pay such drafts as Barrios might draw upon them for the advances made by the plaintiff to him until they should notify the plaintiff that they were not satisfied with the goods which Barrios was sending them.

An examination of this evidence tends strongly to support this view, and it was not until the necessity of making the defendants the principal debtors, that he might hold them to their agreement, had been brought to the attention of the plaintiff, that the idea occurred to him that the advances were to be made on account of the defendants, and his view is strengthened to a very remarkable degree by the correspondence between the parties.

On the 22d of September, 1886, the plaintiff writes to the defendants that he is surprised to learn of their refusal to accept the draft, and he adds : " For besides your own admissions, we have proof that you had promised to notify us in time to save us any trouble, but instead of warning us you gave us no intimation whatever of his not satisfying you in every particular. * * * Now, this may be an honorable way to treat us according to your standard of

honor, but we look to you for payment, for it was at your solicitation that we opened an account with Barrios."

Again, more than two weeks later, on the 9th of October, in answer to a letter of the defendants of the 2d, the plaintiff says : " You seem to want to gain time and shirk the consequences of your failing to notify us in time, as Zemansky repeatedly promised, before witnesses, to do when he asked and urged us to accept and pay for Barrios' drafts on you. He said he would guarantee us against any loss whatever, and would telegraph us immediately on Barrios' showing any signs of not doing as you expected, in order that we might refuse his drafts and save our money. * * * If you had kept your word, then the responsibility would have been ours, but as you did not do so, we look to you for redress."

These letters are absolutely inconsistent with the idea that these advances had been made on account of the defendants. The only responsibility urged against the defendants is their failure to notify the plaintiff of their discovery that the goods were not satisfactory. It would have been utterly immaterial to the plaintiff whether they were satisfied with the goods of Barrios or not, if these advances had been made to defendants. The defendants would have been responsible for the advances until they had notified the plaintiff not to continue the same.

The claim which is urged in these letters arises not because the advances had been made for and on account of the defendants, and in the last letter the plaintiff expressly states that Zemansky said he " would guarantee us against any loss whatever." And the first intimation that any primary liability had been incurred by the defendants is when this action is brought after the plaintiff had exhausted his remedies upon the drafts against Barrios ; and when he comes upon the stand and testifies that the agreement was that these advances were to be made on account of the defendants. It seems incredible, if that had been the agreement, that some reference should not have been made in

the correspondence to some such condition of affairs rather than a claim for indemnity placed upon an entirely different ground upon which the plaintiff found he could not succeed.

It is not necessary here to discuss the moral attitude of the defendants, whether they are morally justified in taking the position which they did; that even if they did promise to accept these drafts, they are not legally liable to do so; they must take the burden of raising such a defense, but as they are sheltered in such a contract by the statute of frauds, whether it is honorable or dishonorable is not a question for us to determine.

The evidence upon the part of the defendant in reference to the terms of this interview in June, 1886, contradicts explicitly the salient points of the evidence of the plaintiff in reference to the arrangement as to the acceptance of the drafts, and in this respect the defendants are corroborated by the letters of the plaintiff.

Under these circumstances, under the rule laid down in the case of Boyd v. Colt (20 How. 384), the verdict should have been set aside as against the weight of evidence.

But there is a little evidence corroborating the plaintiff's story in the deposition of the witness Guerra, who was in the banking house of the plaintiff, and was present at the interview between the plaintiff and one of the firm of the defendants, in which he states that he was wrapping up some money at the counter, and did not pay much attention to what was said, but when he got through, he heard this man say to the plaintiff to give Barrios the money that he wanted on shipment of cigars to him, and in case the cigars were not good, he would pay the last draft and telegraph immediately if he did not want him to give Barrios any more money, but he would pay all drafts of Barrios until he should telegraph that he would not be good for them and further that he heard him say that two or three times. But when asked to repeat this evidence, and state exactly what was said, he altered this evidence in a very material particular. He said : " This man told Mr. Waddell, you

can give Mr. Barrios what money he wants on the ship-
ment of cigars, and draw on us and we will pay you im-
mediately, or will pay right down, or to that effect. In case
he does not send us the kind of cigars he has promised to
send us, we will pay you for the last shipment, and tele-
graph you immediately not to give him any more money on
our account," which is the first time that that expression is
used, although he had related the conversation.

This evidence was probably sufficient to take the case out
of the rule laid down in the case above cited, and it was
sufficient to permit the case to go to the jury upon the
question as to whether these advances had been made on
account of the defendants or of Barrios.

This brings us to the exceptions to the charge. The
court had instructed the jury that the first question was,
was there an agreement between the plaintiff and defend-
ants, and that on that point the jury had the testimony of
both sides.

That there was an agreement of some kind between the
plaintiff and defendants seems to be admitted, and as the
question is what the terms of that agreement were, this
seems to be the submission of an issue to the jury that had
not been made and which may have led the jury into error
in respect to the subsequent:

"The next thing for you to determine," said the learned
judge, " and which is important to the rights of the parties
here, is as to what that agreement was." And then he
calls the attention of the jury to the difference between
original and collateral undertakings, and that if it was a
collateral undertaking, it would not under the statute of
frauds be binding on the party making it, unless it was in
writing.

And they were further instructed that if they found
that the agreement was to answer for the debt or obliga-
tion of Barrios, it not being in writing, that the defend-
ants were entitled to a verdict. They were instructed on

the other hand that if they found that the agreement was to advance this money for account of the defendant their verdict should be for the plaintiff.

In order to illustrate the distinction between collateral and original undertakings the defendant requested the court to charge, that if the jury found that Barrios, by reason of said advances made to him by the plaintiff, became the debtor of the plaintiff to the extent of such advances, then they must find that the promise of the defendants was not an original promise, but a collateral undertaking.

The court did not charge this proposition, but told the jury: "You are to determine whether it was an original promise or a collateral undertaking," which in no way presented to the jury the question as to the difference between an original promise and a collateral undertaking which was embraced within the request. The request was pointed at, showing that if Barrios was in any way liable to the plaintiffs for any of these advances, that then the defendants were not. It would seem, in view of the peculiar features of the case, that the defendants were entitled to have the jury's attention called to this particular phrase of the evidence, and that they were entitled to have this charged. The refusal of the court to charge this proposition may, very probably, have misled the jury, in view of the fact this refusal had no reference to the distinction which the court had previously drawn between collateral and original undertakings, but simply impressed upon their minds that they were to determine as to whether an original or collateral agreement had been made, and they may very well have come to the conclusion that any agreement between Zamansky and the plaintiff was an original agreement.

We think, therefore, that for this error the judgment should be reversed and a new trial ordered, with costs to appellants to abide event.

Daniels and Brady, JJ., concur.