S. Samuel Di Falco, S.
In ruling upon the objections to the account of the sole surviving trustee, this court held that an assignment by the income beneficiary to his daughter was revocable by him. We said: ‘1 Section 15 of the Personal Property Law, does not contain any exception in respect of assignments within the family unit. The rights of such assignees are to be judged under established principles of equity jurisprudence. The objectant does not seek to bring herself within those principles. She relies solely upon her rights under the agreement, which she views as constituting her an assignee. The decisions in this State do not go so far as to validate and enforce all assignments of trust income made within the family unit.” (Matter of Boissevain, 34 Misc 2d 846, 852.) No decree has as yet been entered upon the decision overruling the objections of the so-called assignee.
Subsequent to the decision of this court, the Court of Appeals decided Matter of Knauth (12 N Y 2d 259), That case also involved an assignment to a member of the family of the income beneficiary. Writing for the majority, Judge Fuld said (pp. 263-264): “ Absolute though the prohibition is on its face, there is no doubt that [Personal Property Law, § 15] is subject to qualification. When read in connection with related statutory provisions (Real Property Law, § 98; Civ. Prac. Act, § 793), it is clear that the rule prohibiting the transfer of income from a spendthrift trust is designed to protect the beneficiary against his own improvidence so that such income may be preserved not only for his support but for that of his family as well. (See, e.g., Wetmore v. Wetmore, 149 N. Y. 520; Matter of Sand v. Beach, 270 N. Y. 281, 285-286.) And, it follows from this, an assignment of trust income for the support of wife and children, far from violating the policy or the spirit of the rule, actually tends to effect its purpose.” Although this statement, standing by itself, might appear as an absolute and unconditional validation of assignments within the family unit, the decision went on to say that in a case in Avhieh the assignment of trust income left the beneficiary without sufficient means for his own support, or in a case where his circumstances had changed since the assignment so that he requires for his support, or for that of his then dependents, more of the income from the trust than he had *239 originally retained, he might apply to a court of equity “ for such reallocation of the income as is deemed necessary ” (p. 265). Quite obviously, the Court of Appeals did not rule that an absolute assignment of trust income could be made within the family unit, for if the assignment were absolute and were unconditionally effective, its terms would not be subject to modification by a court of equity.
The person claiming as assignee now moves to reargue the objections to the account on the ground that the decision of this court is not in accord with the principles laid down in Matter of Knauth. We refer to the objectant as a person claiming to be assignee, for the reason that she does not rely on a formal assignment but rather contends that a separation agreement between her parents, a subsequent direction by the income beneficiary to the trustees, and the circumstances surrounding these instruments, amounted to an equitable assignment of income. This court, in disposing of the issues, assumed, without deciding the point, that the objectant was an assignee. In the view which this court took of the governing principles of law, it was not necessary to go further into the question of the objectant’s status.
This court and the Court of Appeals both ruled that an assignee of the trust income stood in a different position than an assignee of the trust corpus. An assignment of principal is permissible; the assignment is valid and effective, and it passes all of the interest of the assignor without regard to the prudence of the assignment or the needs of the assignor. An assignment of income, on the other hand, is not absolute, may be made only within a limited group, is subject to the supervision of a court of equity, and if the assignor has assigned more than he requires for his needs, a “reallocation” of the income becomes necessary. To this extent the two decisions are in accord. There are, however, differences between the two decisions.
This court, following the decisions in the Surrogate’s Court of this county (Matter of Yard, 116 Misc. 19; Matter of McCarthy, N. Y. L. J., May 15, 1942, p. 2075, col. 5; Matter of McCarthy, N. Y. L. J., Feb. 20, 1946, p. 696, col. 5), held that an assignment of trust income is not valid as an assignment, but is relevant in determining the reasonable and equitable sums to be allocated out of trust income to the support of those to whom the beneficiary owes the duty of support. This court cited with approval Professor Scott’s statement of the same rule in Ms excellent treatise of the law of trusts. After adverting to the decisions which permit the wife and children of a beneficiary to *240 enforce their claims for support against his trust interest and the conflicting decisions which deny them any right at all, Professor Scott writes: ‘ ‘ It is possible to take an intermediate view. It may be held that the dependents of the beneficiary cannot be precluded from reaching his interest under a spendthrift trust, but that they can reach only so much of the income as under the circumstances may appear reasonable to the court which has control over the administration of the trust. Much may be said in favor of this view.” (2 Scott, Trusts [2d ed.], p. 1111.) This has been the rule which the Surrogate’s Court has applied and which this court applied in its decision herein.
In Matter of Knauth, the petition of the accounting trustees asked the court to determine “ whether by reason of the agreement made August 1, 1947 * * * it is, and during the life of Oliver Dixwell Knauth will remain, the duty of the trustees * * * of the 1931 trust to treat Mary Pickett Knauth as the income beneficiary of the 1931 trust who while living is entitled to be paid all net income of the 1931 trust in excess of $100 a month or making such other or different judicial determination respecting the legal effect of said agreement * * * with respect to the net income of the trust as to the Court may seem proper. ’ ’ In the decree settling the accounting, it was ‘ ‘ Ordered, Adjudged and Decreed that the assignment agreement heretofore entered into by and between Oliver D. Knauth and Mary P. Knauth * * * dated August 1, 1947, insofar as it pertains to distribution of income from the trust established by Anna D. Knauth under date of October 21, 1931, is irrevocable by said Oliver D. Knauth and is, in all such respects, valid, binding, conclusive, effective and enforceable in accordance with its terms.” The trustees were ordered to comply with the assignment “ as written ’ ’ and to distribute income to the assignee in accordance therewith. The Appellate Division modified the decree of Special Term to the extent of deleting a provision that the income beneficiary had “ no other or further interest or right in or to said income so long as said trust continues to exist”, stating that it could not be said at that time “ that under no circumstances in the future would respondent-appellant be entitled to an additional right or interest in the income of this trust which was drawn specifically to protect him against his own improvidence.” (15 A D 2d 778.) The Court of Appeals, in turn, modified the order of the Appellate Division. The opinion did not state the precise ground of modification, placing it generally on the basis of its entire opinion. The opinion indicates that the equities had been examined by the Court of Appeals, as well as by the lower courts. The court said: “ Here, on the facts adduced, *241 the courts below were privileged to conclude, as they did, not only that the assignment agreement was fair and reasonable when made in 1947, not only that it continued so down through the years since its execution, but that Oliver, ‘ better off financially ’ than Mary, has continued to have sufficient means for his maintenance. If, however, Oliver’s circumstances do change in the future and he requires for his support or that of his then dependents more of the income from the trust than he retained, he is free to apply to the court for such reallocation of the income as is deemed necessary ” (pp. 264-265). Thus it would appear that the modification by the Court of Appeals lay in the grant of permission to seek a future modification of the division of income and in the giving to the assignment of a somewhat less binding, conclusive and effective character than the lower courts gave to it. The Court of Appeals, however, in no way expressed any disagreement with the lower court rulings insofar as they gave effect to the assignment as an effective and enforcible instrument, at least until a court of equity stepped in.
In the light of the dissenting opinion, the ruling of the majority becomes more clearly revealed. The dissenting opinion makes it patent that what the court Avas deciding was that the assignment was valid and effective and would continue so until modified by a court of equity. Judge Vau Voobhis, in his dissent said: “ There is no reason to suppose that in authorizing spendthrift trusts the Legislature had in mind to except irrevocable assignments of income to husbands or wives. The established case law is to the effect that the Legislature intended it to be quite sufficient that separated wives should be permitted to participate under court order in surplus income beyond what the court finds is necessary for the support of the beneficiary. * * * This beneficiary has married again. * * * The disposition of his trust income as between both wives and the children, beyond what is required for his support, should be left to the sound judgment of a court of equity as in the Wetmore case, unaffected by any transfer which he purports to have made to his first wife in contravention of the statute in such case made and provided ” (pp. 267-268). In other words, the dissenting opinion was taking the approach which Professor Scott termed the “ intermediate view ”, the approach which was also taken by this court in the pending case.
It, therefore, appears quite clearly that the difference between the Court of Appeals decision and the prior decision of this court is that the former recognizes the assignment as operative and effective unless and until a court of equity directs a different allocation of income, while our decision would require the inter *242 position of a court of equity to change the testamentary directions for payment of income, recognizing the assignment only as evidence of what is equitable and just, meeting the needs of both beneficiary and dependents. As Surrogate Foley said in Matter of Yard (116 Misc. 19, 22, supra), in the case of a separation agreement or an assignment to his wife “ the husband consents to the allowance, thereby recognizing the duty to provide and the reasonableness of the amount fixed by both parties.” In that case the learned Surrogate saw no practical difference ‘ ‘ between the direction in a decree of alimony, and the amount allowed in the separation agreement ”, and while some of the language in that ease might indicate the thought that the separation agreement was irrevocable, the same Surrogate in a later decision made it clear that the Surrogate acted at all times under his equity powers. (Matter of McCarthy, N. Y. L. J., May 15, 1942, p. 2075, col. 5, supra.)
The different approaches to this problem may often be without great significance and may lead to the same result. Indeed, the decision in Matter of Knauth could have been the same Under either theory because the equities were fully considered by all courts. In the pending ease, however, it does make a difference which approach is used because no party offered any proof whatever of the equities. As we said in the main decision, the objectant does not seek a decision by a court of equity exercising its power to direct a different allocation of income than does the will of this testatrix. “ She relies solely upon her rights under the agreement, which she views as constituting her an assignee.” She seeks to recover for a period in the distant past, namely, May 1, 1946 to November 1, 1951. During the period of her minority she was presumably supported by her mother or by her stepfather. If there are equities growing out of her need for support and the furnishing of that support when needed, such equities may very well run in favor of others. Indeed one who furnished the support which the father was obliged to furnish may have the right to recover from him. The objectant has, therefore, chosen to stand upon her absolute rights. The income beneficiary has defaulted, and no proof has been offered as to his needs, past, present or future. There is nothing in this record upon which a court of equity may act in making an allocation of income other than the agreement itself. Under the decision in Matter of Knauth, as assignment of income for support of a daughter is effective and operative until changed by a court of equity. In other words, until the court acts, the assignment is good. Under the decision of this court, an assignment is but one of the factors to be considered. *243 A court of equity must consider all of the relevant circumstances and. make such direction as is equitable and just under the circumstances. Until the court acts, the assignment is of no effect.
This court, must, of course, follow the new rule which has been formulated by the Court of Appeals in Matter of Knauth. Under that rule, an assignment of trust income made by the beneficiary for the support of a dependent child is valid and effective unless and until a court of equity directs a different disposition of income. Being valid and effective as an assignment rather than as temporary directive to the trustee, it is not revocable at the mere whim of the assignor. This brings us then to the question which was not necessary for decision heretofore, namely, whether the beneficiary had in fact made an assignment of income to or for the benefit of his daughter.
The separation agreement between husband and wife, which was later incorporated in the divorce decree, expressed the consensus of the parties on the fair and reasonable annual sum deemed necessary for the support and maintenance of the wife and their child. That agreement recited that the husband had on the same day authorized and directed the trustee of this trust to make payment of that annual sum to his wife in equal monthly installments. In the event of the remarriage of the wife, the agreement provided that the husband would, nevertheless “pay for the education, maintenance, support, living expenses, etc. of the child, the sum of Two thousand six hundred dollars ($2,600) per annum, to be paid by the Irving Trust Company as trustee, in as nearly as possible equal monthly installments, in advance, on or before the 15th day of each month during the lifetime of the child or until such child shall marry.” (Emphasis added.) Other text in the agreement makes clear the incontestable fact that the husband is the income beneficiary of this trust and that the payments to be made to his dependents are to be made only from the income of the trust.
With respect to the payments that were to be made to the wife, the agreement stated (using the past tense) that the husband had already given directions to the trustee, but in respect of the payments to the daughter, which were contingent upon a possible future event, the provision for written instructions to the trustee was necessarily expressed in terms of the future. The agreement accordingly contained the provision that upon the remarriage of the wife, the husband would give written authorization and direction to the trustee to make the stipulated payments to the child or to her legal guardian. However, regardless of notice or added authorization to the trustee, we must *244 remember that the separation agreement explicitly provided for the payments to be made by the trustee of this trust. In any event, when the former wife of the income beneficiary did remarry, the beneficiary did send a formal written direction to the trustee, “in accordance with the agreement entered into between Mrs. Suzanne S. Boissevain and myself, dated November 11,1937 and now still in effect, ’ ’ to pay to his daughter or to her legal guardian the sum of $2,600 per year. That instruction was to supersede, cancel and nullify the prior instructions to pay the larger sum to the wife.
The trustee made the payments as directed by the income beneficiary for a period until May, 1946, when the income beneficiary notified the trustee not to pay the guardian of the infant, stating that he “ will arrange with her.” He never made any arrangement whatever for payment of the sum due. The agreement gave him no right to revoke the direction for payment to the daughter. It was clearly the intent of the agreement that he would have no option whatever in that respect.
The question is whether the agreement and the subsequent direction to the trustee amounted to an assignment of the income of the trust. Many of the distinctions between equitable assignments and common-law assignments have disappeared. (Coastal Commercial v. Kosoff & Sons, 10 A D 2d 372, 376; Creation of an Equitable Assignment, 21 St. John’s L. Rev. 202; 4 Corbin, Contracts, § 858.) Assignments of trust income might fairly be regarded as equitable assignments since they have been saved from the condemnation of the statute only by a court of equity acting upon equitable principles. (4 Pomeroy’s Equity Jurisprudence [5th ed.], § 1277.) The distinction, however, is not important in this case because no equities or rights of any third party is involved.
It is true that the word “ assign ” was not used in the separation agreement, but the use of that particular word is not an essential of a valid assignment. (3 N. Y. Jur., Assignments, § 28, p. 284; Williams v. Ingersoll, 89 N. Y. 508, 521; Dickenson v. Phillips, 1 Barb. 454, 458.) The agreement was apparently drafted by competent counsel, who would undoubtedly be mindful of prohibitions against assignment of trust income. The transaction between the parties is to be interpreted in the light of what they were doing and what they were trying to accomplish and “ should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result.” (Sexton v. Kessler, 225 U. S. 90, 97.) “ The test of an equitable assignment is the inquiry whether or not an assignment makes an appropriation of the fund so *245 that the debtor would be justified in paying the debt or the assigned part to the person claiming to be the assignee.” (Hinkle Iron Co. v. Kohn, 229 N. Y. 179, 183; see, also, 4 Pomeroy’s Equity Jurisprudence [5th ed.], p. 806.)
There is no essential difference in substance between the instrument in this case and that in Matter of Knauth. In the latter case, it is true that the separation agreement referred to the husband as making an “ irrevocable assignment ” to the wife of trust income in discharge of his duty to support her and the children, while the agreement in the pending case does not use those words. It does, however, contain the agreement that the husband shall pay a specified sum for the support of his daughter and that the sum is to be paid by the trustee of this trust and from the income of this trust. It further provides that the husband will give written instructions to the trustee to carry out his agreement. He did give the requisite instructions. The agreement makes it certain that the payment of income for the support of the daughter was not to be dependent upon any future agreement or any future arrangement. The income of the trust was the source from which the income was to flow directly to the daughter. The income beneficiary plainly recognized that the assignment of income was irrevocable by him, for his original letter of instruction to the trustee directed the trustee to make the payments to the wife “until you receive notice to the contrary signed by me and my wife # * * or our respective legal representatives ”. The second letter of instruction plainly states that it is being given pursuant to the terms of the same agreement.
The court, therefore, grants the motion for reargument and holds that the assignment was effective until the marriage of the objectant, that it was not revocable by the beneficiary, and that the objectant is entitled to recover the stipulated payments from the period of the last installment up to the time of her marriage. The court understands that there is ample income on hand to make the payments, due to the allocation of stock dividends received in the past. The court understands also that the affirmative defenses raised by the trustee have been withdrawn on the stipulation of the parties herein.
The prior direction for a decree is withdrawn, and a decree may be submitted, on notice, in accordance with this decision.