**BANQUE ARABE et INTERNATIONALE D'INVESTISSEMENT,**
Plaintiff,

v.

**BULK OIL (USA) INC., Defendant.**

**No. 86 CIV 5552 (LBS).**

United States District Court,
S.D. New York.

Dec. 12, 1989.

1412

Rogers & Wells, New York City, for plaintiff; Joseph H. Spain, Paul M. Hellegers, and C. Ryan Reetz, of counsel.

John P. McMahon, New York City, for defendant; John P. McMahon, of counsel.

SAND, District Judge.

This diversity action arises from purchase and repurchase agreements between two petroleum dealers and the extension of credit to one of those dealers by a bank. The plaintiff bank asserts claims as a third party beneficiary of the purchase agreement and as an assignee of rights of one dealer under that purchase agreement, and on the grounds of breach of contract, fraud and fraudulent conveyance. Defendant moves for summary judgment on all claims.

## I. *Background*

On December 13, 1985, Will Petroleum Inc. (hereinafter "Will") entered into an agreement to sell 550,000 barrels of regular gasoline to Defendant Bulk Oil (USA), Inc. (hereinafter "BOUSA") at 71 cents per gallon. In a separate agreement executed at the same time, Will arranged to repurchase the same volume of gasoline from BOUSA at 71.3 cents per gallon. The deal was brokered by D. Checki, a petroleum broker employed by Triad Petroleum Inc. (hereinafter "Triad"), and no direct contact took place between Will and BOUSA at the time of the agreements. Both contracts (hereinafter "the BOUSA/Will contracts") provided that the gasoline would be deliverable during the period from December 15, 1985 to January 31, 1986 at BOUSA's barges in New York Harbor or by book transfer. Payment was to be made by "telegraphic transfer ... to seller's designated bank." The only explanation offered by either party for this transaction is that Will essentially agreed to pay BOUSA the difference in price as compensation for accepting the responsibilities of a buyer in the transaction.

On December 13, 1985, Will sent a telex to Plaintiff Banque Arabe et Internationale D'Investissement (hereinafter "BAII") requesting a loan of $12,440,256.04. The telex requested that the money be forwarded to ARCO Petroleum Products Company (hereinafter "ARCO") on December 16, 1985 to pay for 48,344 metric tons of pen-

tane plus condensate which Will had already contracted to buy from ARCO. The pentane plus condensate was evidently intended to be a component of the goods to be sold to and then repurchased from BOUSA. According to plaintiff, the general practice in requests of this kind from Will was for Will to provide a description of the purchase contract needing financing and a description of one or more contracts of sale corresponding in volume to the intended purchase. Will then assigned the contracts to plaintiff in return for the requested financing arrangement. Will's December 13, 1989 telex described the sale of the 550,000 barrels to BOUSA, but did not mention Will's agreement to buy back the same volume from BOUSA. The telex also indicated that BOUSA would issue a purchase/payment confirmation in support of the transaction.

On December 13, 1985, R. Fuchs, the Executive Vice President of BOUSA who negotiated the BOUSA/Will contracts for BOUSA, was apparently unaware that the contracts related in anyway to a transaction between BAII Paris and Will. D. Checki, the Triad petroleum broker who brokered the deal between Will and BOUSA, was apparently unaware of the existence of any arrangement between Will and BAII at the time he negotiated the contracts. At 4:58 New York time on December 13, 1985,[1] Triad confirmed the first Will/BOUSA contract in a telex to Will. At 5:00 pm, Triad quoted to BAII by telex its earlier telex confirming the Will/BOUSA contract. Finally, at 5:21 pm, Triad confirmed the contract in a telex to BOUSA, though the telex did not indicate that a copy had been sent to BAII.

At 9:46 am on December 16, 1985, Will sent a telex to BOUSA requesting that BOUSA transmit a purchase/payment confirmation to BAII with specific wording suggested by Will. Defendant alleges, though plaintiff denies, that the precise wording was composed by Will's treasurer, D. Pirner, and J.R. Finot, the BAII officer

in charge of Will's account. The suggested language read:

> [BOUSA] confirms the purchase from [Will] of 550,000 barrels regular gasoline.... [BOUSA] agrees to post a letter of credit in favor of [Will] prior to lifting of this product, and to advise such letter of credit through [BAII].

Much of this case turns on the parties' differing interpretations of this language.

At 11:06 am on December 16, BAII informed ARCO by telex that it would credit ARCO's account at Irving Trust New York with the $12,440,256.04 requested by Will. At 12:50 pm BAII instructed its New York correspondent to transfer the money to ARCO. BAII now claims that Will had advised BAII that the written purchase/payment confirmation of the Will/BOUSA contracts from BOUSA could be expected and that it transferred the money in anticipation of receiving the confirmation. At 2:51 pm BOUSA sent a telex to BAII conforming to the language specified by Will. BAII contends that in reliance upon the anticipated security of full payment of the purchase price which BOUSA's letter of credit would have afforded, it carried the pentane loan on its books and extended new credit to Will.

Pursuant to an agreement between BOUSA and Will made on or before January 23, 1986, the Will/BOUSA contracts were performed through a book transfer. BOUSA never actually posted a letter of credit, advised the letter of credit through BAII or paid any of the purchase price for the gasoline to BAII. Instead, after a book transfer of the product, BOUSA "netted out" payment of the contract purchase price against Will's debt under the repurchase agreement.

On January 29, 1986, Will filed a petition under Chapter 11 of the Bankruptcy Code. Will was subsequently unable to repay all of the outstanding loans it had received from BAII. On January 31, 1986 BAII sent a telex to BOUSA advising that BAII was the assignee of and holder of a security interest in the Will/BOUSA contract.

---

1. For the sake of simplicity, all times referred to in this opinion will be Eastern Standard Time, though this is not meant to suggest that all the relevant events took place in New York.

The telex concluded by stating: "We would appreciate your response and comments on the above topic ..." A second telex in stronger terms but also suggesting a proposed amicable resolution was sent on March 13, 1986.

On February 13, 1986, with the value of Will's petroleum product inventory declining rapidly in the market conditions prevailing at the time, the Bankruptcy Court entered an order authorizing Will to abandon the inventory and accounts receivable to BAII. BAII completed its sale of Will's inventory by June 26, 1986, but the proceeds were insufficient to satisfy all of Will's debts to BAII. BAII then commenced this action on July 14, 1986, seeking to recover the difference between the unpaid purchase price of the first Will/BOUSA contract and the proceeds from the sale of equivalent amounts of Will's inventory. In a separate count, plaintiff sought the difference between the amount of its extension of credit to Will and the proceeds of the sale of Will's inventory. Defendant filed a motion to dismiss and for summary judgment with respect to this action on November 3, 1987. Without deciding the merits of the motion, the Court then granted plaintiff leave to file an amended complaint. In July 1988, pursuant to a stipulation between the parties, plaintiff filed a second amended complaint containing the counts set forth below. BOUSA now moves for summary judgment on the amended complaint, to strike portions of plaintiff's affidavits and for sanctions.

## II. *Discussion*

Fed.R.Civ.P. 56(c) stipulates that a motion for summary judgment shall be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Materiality of facts is determined by the applicable substantive law, and a genuine dispute exists over a material fact if a reasonable factfinder viewing the evidence could decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1985).

### A. *Third–Party Beneficiary Claim*

In Count I of its complaint, plaintiff alleges that it was a third-party beneficiary of the first BOUSA/Will contract and is therefore entitled to recover damages for BOUSA's failure to make payment to Will's account at BAII. Defendant moves to dismiss Count I, arguing that plaintiff was at most an incidental beneficiary of the BOUSA/Will contract and as such has no third-party beneficiary claim.

■ Under New York law, only an intended beneficiary of a contract may assert a claim as a third party. *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 330, 357 N.E.2d 983, 987 (1976). A beneficiary of a promise is an intended beneficiary if:

recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Septembertide Publishing B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 679–80 (2d Cir.1989) (quoting Restatement Second of Contracts § 302(1)(a) & (b) (1979)). *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 213 (1985) (adopting Restatement formulation). It is also established that "the obligation to perform to the third party plaintiff need not necessarily be expressly stated in the contract." *United States v. Ogden Technology Laboratories, Inc.*, 406 F.Supp. 1090, 1092 (E.D.N.Y.1973). *See also Strauss v. Belle Realty Co.*, 98 A.D.2d 424, 469 N.Y. S.2d 948, 950 (2d dep't 1983) (quoting *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 186 (4th Dep't 1980)), *aff'd*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985).

Whether BAII was a third-party beneficiary depends entirely upon the meaning of the terms of the first December 13, 1985 BOUSA/Will contract and the December

16, 1985 purchase/payment confirmation sent by BOUSA. These terms, the meanings of which are not obvious from their face, and the circumstances surrounding their adoption, must be scrutinized by the Court to determine whether a reasonable factfinder could find from them that BAII was a third-party beneficiary.

Defendant maintains that BOUSA's agreement on December 13, 1985 to make payment for the gasoline "to seller's designated bank" was an agreement to pay Will at a bank to be designated by Will. In contrast, plaintiff contends that this clause meant that BOUSA was to pay BAII specifically. Plaintiff does not dispute that payment was to be made to Will's account at BAII, but argues that the distinction between money in Will's account at BAII and money at BAII is meaningless for the purposes of this case. Finally, plaintiff alleges that BOUSA's agreement in the December 16, 1985 purchase/payment confirmation to post a letter of credit in favor of Will and to advise the letter of credit through BAII was intended to protect BAII's right to repayment for its extensions of credit to Will. Defendant counters that even if it had advised the letter of credit through BAII, BAII would not have received protection for its right to repayment from Will.

A reasonable factfinder could find that the circumstances surrounding the December 13, 1985 BOUSA/Will contract suggest that BAII was the "seller's designated bank" referred to in the payment clause. It is undisputed that on December 13, 1985 Will both requested a loan for a purchase of a component of gasoline from ARCO and arranged to sell and buy back from BOUSA 550,000 barrels of gasoline. It is also clear that BAII was conveniently not told of Will's arrangement to buy the gasoline back. A factfinder could infer that Will and BOUSA entered into the contracts because BAII demanded that Will provide a responsible buyer for the product the purchase of which it was financing. BAII's only apparent interest in the transaction was to secure repayment for its loans, and its actions can reasonably be interpreted as efforts to arrange that outcome.

Payment to Will's account at BAII can also be considered payment to BAII. As defendant's own financial officer, Clara Schroeder, conceded in deposition testimony, the purpose of directing payment through a specific bank is to guarantee that the money comes under that bank's control. Moreover, under New York law:

> [m]oney deposited in a general account at a bank does not remain the property of the depositor. Upon deposit of funds at a bank, the money deposited becomes the property of the depositary bank; the property of the depositor is the indebtedness of the bank to it, a mere chose in action.

*Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 560 (2d Cir.1976). *See also Sundail Constr. Co., Inc. v. Liberty Bank of Buffalo,* 277 N.Y. 137, 141, 13 N.E.2d 745 (1938). As a practical matter, the funds, once deposited in BAII, could not have been recovered by Will unless BAII agreed to transfer them elsewhere. Finally, defendant offers no evidence to suggest that BAII could not have exercised control over funds deposited in it.

While plaintiff's complaint alleges that BOUSA was in fact told that the BOUSA/Will contract would be used as a security for credit extended by BAII, defendant contends that it was unaware that BAII was Will's "designated bank" or that BAII had any interest whatsoever in the transaction. A factfinder could conclude, however, that BOUSA should have at least presumed that a transaction such as this one had such a purpose. At the very least, whether BOUSA knew of BAII's interest is an issue for a factfinder to resolve at trial. Furthermore, it is doubtful that the promisor need know the identity of the third-party at the time of the agreement to establish the third-party's right of enforcement. Certainly the Restatement test neither expressly nor implicitly requires such knowledge. *See also Goodman–Marks Assocs., Inc. v. Westbury Post Assocs.,* 70 A.D.2d 145, 420 N.Y.S.2d 26, 29 (2d Dep't 1979) (intention of promisor is of "primary importance" in determining whether party is intended beneficiary, and promisee can be

presumed to have intended natural results of his acts and promises).

It is certainly true that advising a letter of credit might not always protect a bank's right to repayment for its extensions of credit. The New York Uniform Commercial Code defines an advising bank as a bank which "gives notification of the issuance of a credit by another bank." N.Y. Uniform Commercial Code § 5–103(1)(e) (McKinney 1964). *See also* H. Harfield, *Letters of Credit* 10–11 (1979) (Advising bank transmits fact of issuance and terms and conditions of the credit, but function is "confined to the transmission of information and the authentication of the information transmitted"). From these definitions, it would seem that the advising bank is not generally given tools with which to secure repayment of a debt owed to it by the beneficiary of the letter of credit.

Nevertheless, the parties disagree as to the actual practice in the industry. Plaintiff contends that these definitions neglect the reality that the advising bank would have received the actual letter of credit which the seller would need in order to receive payment. Plaintiff argues further that with the advising bank in possession of the instrument itself, the seller would then have to forward the payment to the bank in order to effect cancellation of the instrument. Plaintiff also represents that a letter of credit is usually advised through a bank for the purpose of making the cash available to that bank to reimburse itself. At the same time, defendant counters that physical possession of the letter of credit has no significance, and that the beneficiary of the letter of credit would still have been entitled to payment. Defendant also denies that an advising bank generally receives the payment from either the issuing bank or the buyer, unless the letter of credit specifies explicitly that it is "payable at the counters" of the advising bank.

Clearly, factual questions about the general practices in the oil trading and banking industries have arisen. The Court is not prepared to answer them conclusively on the basis of the present record. In light of the emphasis placed during these transactions on the payment flowing through BAII and the fact that defendant's own financial officer conceded that a bank would "probably" advise a letter of credit to guarantee that payment traveled through it, a factfinder could reasonably conclude from the evidence presented that the parties intended the funds to flow through BAII.

### B. *Assignment Claim*

Count II of plaintiff's complaint alleges that Will assigned to BAII its right to receive the purchase price from BOUSA for the first BOUSA/Will contract. Defendant moves to dismiss Count II on the grounds that the purchase price was actually payable to Will and that BOUSA never received adequate notice of the assignment.

Under New York law, an assignment is valid only where the assignor retains no control over the funds, no authority to collect and no power to revoke. *In Re Knowlton's Will*, 208 Misc. 454, 143 N.Y.S.2d 111, 120 (Sur.Ct.1955). *Accord Miller v. Wells Fargo*, 540 F.2d at 558. The use of the word "assign" is not essential to effect a valid assignment. *In Re Boissevain's Estate*, 40 Misc.2d 237, 243 N.Y.S.2d 36, 43 (Sur.Ct.1963). Indeed, "any act or words are sufficient which show an intention of transferring the chose in action to the assignee, when the assignor is divested of all control and right to cause of action and the assignee is entitled to control it and receive its fruits." *Advance Trading Corp. v. Nydegger & Co. Inc.*, 127 N.Y.S.2d 800, 801 (Sup.Ct.1953).

The thrust of defendant's argument is that because BAII would have credited any payment from BOUSA to Will's account, Will would have retained control over the payments. Defendant argues further that any consequences arising from the arrangement between plaintiff and Will for use of the funds would necessarily have transpired after Will's account was credited. As the Court concluded above, however, a factfinder could find that under the circumstances of this case payment to Will's account would have constituted payment to BAII or at the least constituted a fund over which BAII had control. It fol-

lows that a factfinder could find that BAII would have exercised control over the funds even if they had been credited to Will's account.

Defendant directs the Court to *Miller v. Wells Fargo,* 540 F.2d at 557–560, which it contends stands for the proposition that crediting the repayment of a loan to the purported assignor's account is proof that no assignment took place. In *Miller* a bankrupt borrower used the proceeds of a loan to complete a complicated foreign exchange arbitrage transaction, which involved the purchase of Swiss Francs, the depositing of those Francs in a time deposit account in a European bank, and the repurchase of those Francs by a Swiss bank six months later. The lender, who was repaid out of the proceeds of the sale of the Swiss Francs, claimed that the repayment was not a voidable preference in the bankruptcy context because the choses in action had been assigned to it. While it did consider the fact that the Swiss bank had transferred the proceeds back to the borrower's account at the lender in deciding that the borrower had not divested itself of all control of the funds, *id.* at 559, the Second Circuit's decision rested on a number of factors not present in this case. In *Miller* the other banks were never told of the lender's purported interest in the funds, and the borrower's access to the funds was not restricted in any way until the funds reached the lender. In fact, it was the borrower itself that had to instruct that the Francs at the European Bank be transferred to the Swiss Bank and that the dollars from the Swiss Bank be transferred to the borrower's account at the lender. Here, in contrast, a factfinder could find that the funds for repayment of the BOUSA/Will contract were never intended to come under Will's control.

That the funds were to be transferred to Will's account at BAII does not by itself indicate that Will would not have divested itself of all control over the funds. As the Fifth Circuit has held in analogous circum-

stances,[2] "merely simultaneous bookkeeping entries reflecting the credit and debit to the [borrower's] account" do not create a "magic moment." *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1360 (5th Cir.1986). Under circumstances such as those which exist in this case, the bank continues to have "actual and lawful control" over the money in the borrower's account. *Id.* at 1361. As a result, a factfinder could reasonably find that the parties intended for Will to divest itself of all control over the funds.

■■■ Defendant also claims that BOUSA never received legally adequate notice of the assignment. Notice of an assignment is effective under the applicable provision of the Uniform Commercial Code when the debtor receives notice that the funds have been assigned and that payment is to be made to the assignee. *Estate of Haas v. Metro–Goldwyn–Mayer, Inc.,* 617 F.2d 1136, 1139 (5th Cir.1980). The New York Uniform Commercial Code states that a person has "notice" of a fact when:

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

N.Y. Uniform Commerical Code § 1–201 (McKinney 1964). *See also Robert Parker's Truck & Trailer Repair, Inc. v. Speer,* 722 S.W.2d 45, 48 (Tex.Ct.App.1986) (" 'Actual notice' embraces those things that a reasonably diligent inquiry and exercise of the means of information at hand *would have* disclosed.") A debtor's general knowledge that the creditor uses a specific bank for financing is not sufficient to constitute notice. *Banque De Paris Et Des Pays-Bas v. Amoco Oil Co.,* 573 F.Supp. 1464, 1472 (S.D.N.Y.1983).

■■ Plaintiff claims that the payment clause in the BOUSA/Will contract and the

---

**2.** While *Coral Petroleum* involved a voidable preference claim against a lender which had repaid itself from funds deposited in the lender before the borrower declared bankruptcy and

not a claim that the funds had been assigned to the lender, the issue before the Court was also the degree of the borrower's control over the funds.

request by Will to send the December 16 telex, against the background of general industry practice and custom, provided adequate notice to BOUSA. The Court has already concluded that under the circumstances, and especially in light of the nature of the BOUSA/Will transaction, the "designated bank" in the payment clause could have referred to BAII. Moreover, the request to send the telex identified BAII specifically and required BOUSA to make a commitment to BAII, alerting BOUSA of something more than the fact that Will generally used BAII for financing. Finally, based on BAII's representation about the general practices and customs in the industry, a factfinder could find that BOUSA committed itself to forward payment to BAII and that it knew that BAII planned to exercise full control over the funds.

### C. *Contract Claim*

In Count III plaintiff alleges that in reliance upon Will's representation that the purchase/payment confirmation would be forthcoming, it loaned Will the money to buy the pentane from ARCO. Plaintiff also claims that it relied upon BOUSA's promise in the purchase/payment confirmation to advise a letter of credit in favor of Will through BAII by "continuing to carry and extend new loans to Will at an increased level corresponding to [BOUSA's] commitment." Complaint at 21. In essence, plaintiff maintains that these representations constituted an enforceable promise by BOUSA to pay plaintiff, and that plaintiff suffered an injury by relying upon that promise.

■■■■ To be enforceable, a contract must be supported by valid consideration. Under New York law, consideration can be either benefit to promisor or loss or detriment to promisee. *Morgan Guar. Trust Co. of N.Y. v. Metcalf,* 28 Misc.2d 1057, 214 N.Y.S.2d 77, 79 (Sup.Ct.1961). It can also be understood as a bargained for exchange. In other words, "[t]he promise and the consideration *must* purport to be motive each for the other, in whole or at least in part; it is not enough that the promise

induces the detriment or that the detriment induces the promise if the other half is wanting...." *Tuition Plan, Inc. v. Zicari,* 70 Misc.2d 918, 335 N.Y.S.2d 95, 100 (Dist.Ct.1972). *See also* 1 S. Williston, *A Treatise on the Law of Contracts* § 142 (3d ed. 1957) ("Consideration, by its very definition, must be given in exchange for the promise, or at least in reliance upon the promise. Accordingly, something which has been given ... without reference to [the promise], cannot, properly speaking, be legal consideration.")

■■■■ Plaintiff argues that BOUSA agreed to advise the letter of credit through BAII to induce plaintiff's extension of credit to Will, "thereby facilitating [BOUSA's] own dealings with Will and the receipt of the profits which [BOUSA] anticipated would flow to [BOUSA] as a result of . those dealings." Complaint at 21. However, a factfinder could not find that BAII's extension of credit to Will, its detriment, was BOUSA's motive for promising to advise a letter of credit through BAII. In other words, BOUSA's promise cannot be said to have been induced by the detriment BAII agreed to incur. Nor can it be said that the detriment was bargained for by BOUSA and BAII. As plaintiff itself concedes, BOUSA's motive in the transaction was to receive the difference between the prices of the sale and resale of the gasoline from Will as compensation for accepting the responsibilities of a buyer in the transaction. Plaintiff offers no evidence to suggest that payment of this compensation was dependent upon plaintiff actually extending credit to Will. In fact, the text of the BOUSA/Will contract makes no reference to any loan from BAII and it would appear that the agreement would have enforceable whether or not BAII loaned the money to Will.

■■■■ Plaintiff also claims that even if there was no bargained for consideration, BOUSA's promise is enforceable under the doctrine of promissory estoppel. Under New York law, the elements of promissory estoppel are: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is

made; and an injury sustained by the party asserting the estoppel by reason of his reliance...." *Ripple's of Clearview, Inc. v. Le Havre Assocs*, 88 A.D.2d 120, 452 N.Y.S.2d 447, 449 (2d Dep't), *appeal denied*, 57 N.Y.2d 609, 456 N.Y.S.2d 1026, 442 N.E.2d 1277 (1982). A "substantial change in position" by the promisee in reliance upon the promise is required, *Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir.1977), and action taken in expectation of a promise does not satisfy the reliance requirement. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 79 (2d Cir.1984). *Accord Armored Motor Serv. of Am., Inc. v. First Fed. Sav. and Loan Ass'n of Rochester*, 138 A.D.2d 954, 526 N.Y.S.2d 287, 288 (4th Dep't 1988).

▄ Plaintiff alleges that "believing that [BOUSA's] purchase/payment confirmation was in the process or about to be sent," it paid the money to ARCO for Will's purchase. The evidence indicates that BAII instructed its New York correspondent to transfer the money to ARCO at 12:50 pm on December 16, 1985. Although BAII claims that Will had advised BAII that the written purchase/payment confirmation from BOUSA could be expected, BOUSA actually sent the confirmation to BAII at 2:51 pm, two hours and one minute after BAII had paid ARCO. In the actions it took before 2:51 pm, BAII was relying upon the expectation of BOUSA's promise. Under these circumstances, there was no clear and unambiguous promise from BOUSA and BAII's reliance was neither reasonable nor foreseeable. To the extent that BOUSA had promised Will that it would make a commitment to BAII before 2:51 pm, only Will could have enforced that promise. Therefore, plaintiff cannot recover under Count III for injuries incurred before its receipt of BOUSA's 2:51 pm telex because BOUSA's promise to advise a letter of credit through BAII only became enforceable under the doctrine of promissory estoppel when BOUSA communicated it to plaintiff.

▄ Plaintiff also claims that after it received the telex containing the promise, it continued to carry and extend new loans to Will at an increased level, incurring "additional" injury in reliance upon the promise. Complaint at 21. In its purchase/payment confirmation, BOUSA "agree[d] to advise such letter of credit through [BAII]." A factfinder could find that this constituted a clear and unambiguous promise. Moreover, the act of sending the text to BAII could be seen as a deliberate communication of the promise to BAII. BAII's willingness to continue to carry and extend new loans to Will after the telex was received can be seen as reasonable and foreseeable reliance upon the promise.

▄ Defendant argues that any promise it made is void under New York's statute of frauds because it would have been a promise to answer for the debt of another. Under New York General Obligation Law,

[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: ...

2. Is a special promise to answer for the debt, default or miscarriage of another person; ...

N.Y. General Obligation Law § 5–701a (McKinney 1989). According to defendant, Will was the primary debtor and BOUSA's promise, as characterized by plaintiff, was to pay Will's debt. Defendant bases its argument on the allegation in plaintiff's complaint that BAII wanted the payment in order to protect its right to repayment for its extensions of credit to Will.

In reality, however, BOUSA's promise was to pay the purchase price of the gasoline to BAII, a different and separate sum from the loans extended to Will by BAII. BAII evidently did intend, if need be, to deduct the amount of its loan from the payment that came from BOUSA, and Will may never have actually received any of the money, but there is no indication that the amounts were correlated or interdependent in any way. The case which defendant cites, *Waddell v. Greenhall*, 6 N.Y.S. 267 (1st Dep't 1889), is easily distinguishable. In *Waddell*, cigar dealers promised a bank that they would pay the amount of

the checks drawn against them by a cigar manufacturer in return for the bank extending a loan to the manufacturer. Each check was a debt incurred by the manufacturer and the dealers had agreed to repay those particular debts. In this case, only if BOUSA had communicated to BAII a promise to pay back the actual sum of the ARCO loan in return for BAII extending credit to Will would *Waddell* apply.

### D. *Fraud Claim*

Count IV of plaintiff's complaint alleges a cause of action based on fraud. According to plaintiff, it's interest in the transaction was finding a genuine buyer for Will's gasoline from whom payment would be guaranteed. Plaintiff also asserts that it was unaware of the agreement between BOUSA and Will for repurchase of the gasoline (the second BOUSA/Will contract). As the second BOUSA/Will contract makes clear, BOUSA may have had no intention of posting a letter of credit or paying the full purchase price, but instead may have planned from the beginning to offset payment against Will's debt under the repurchase agreement after a book transfer of the gasoline. Plaintiff alleges that the purchase/payment confirmation from BOUSA was intended by its very nature to represent that a genuine purchase was to take place and was also purposefully worded to mislead BAII. Defendant seeks to dismiss Count IV on the grounds that it asserts multiple theories of liability, is redundant, does not state a cause of action for fraud and fails to establish reliance.

Defendant contends that because Count IV incorporates by reference the allegations made in the earlier counts, it impermissibly asserts multiple theories of recovery. While courts have held that plaintiff may not assert two theories of liability in the same claim, *see East River Sav. Bank v. Secretary of Hous. and Urban Dev.,* 702 F.Supp. 448, 459 (S.D.N.Y.1988); *Donahue v. Pendleton Woolen Mills, Inc.,* 633 F.Supp. 1423, 1443–44 (S.D.N.Y.1986), plaintiff has alleged a separate fraud claim in Count IV which appears nowhere else in

the complaint and has only incorporated the facts stated in the other claims by reference. Defendant does not suggest that there is anything particularly confusing about plaintiff's presentation of his claims, and a mechanical application of the rule precluding the assertion of multiple theories of liability in one count would serve no purpose in this case.

Defendant also claims that plaintiff's fraud claim is merely a repetition of its contract claim and therefore redundant. A claim for fraud will be dismissed when "the only fraud charged relates to a breach of contract." *Trusthouse Forte v. Garden City Hotel, Inc.,* 106 A.D.2d 271, 483 N.Y. S.2d 216, 218 (1st Dep't 1984); *Brick v. Cohn–Hall–Marx Co.,* 276 N.Y. 259, 263–64, 11 N.E.2d 902 (1937). The inclusion of allegations of intent and/or concealment in the complaint "does not change the nature of the action ... from an action upon contract to an action upon fraud." *Calamel v. Ridge View Realty Corp.,* 115 A.D.2d 279, 496 N.Y.S.2d 154, 155 (4th Dep't 1985), *appeal dismissed,* 67 N.Y.2d 799, 501 N.Y. S.2d 324, 492 N.E.2d 397 (1986). In this case, however, plaintiff is alleging that BOUSA not only did not intend to keep the promise it made but also effectively misrepresented the nature of the BOUSA/Will transaction to BAII in exchange for compensation from Will. BOUSA's alleged fraud interfered with the business relationship between Will and BAII, causing injury to a relationship wholly outside any contract between BAII and BOUSA. While BOUSA's conduct might also have breached an agreement between BOUSA and BAII had this Court found one, it would have been of concern to BAII whether or not a contract existed. *Compare Vista Co. v. Columbia Pictures Industries, Inc.,* 725 F.Supp. 1286 (S.D.N.Y.1989) (WESTLAW, DCT file) (while conduct which breached contract may have been sufficient to establish fraud, only important to plaintiff because of impact on benefits derived from contract). Therefore, the Court finds that plaintiff's fraud claim is not redundant.

Defendant also challenges whether its conduct could be found to constitute fraud.

According to defendant, the December 13, 1985 contract stated that the gasoline could have been deliverable "by barge or by book transfer" and the possibility of a book transfer should have alerted BAII that BOUSA's payment might be "netted out" and never reach BAII. Defendant argues further that its December 16, 1985 purchase/payment confirmation, which said that BOUSA would post a letter of credit "prior to lifting of this product," should be read to mean that a letter of credit would be posted if the product was actually delivered and not if a book transfer and net out took place.

Of course, plaintiff presents an alternative explanation for these terms. It is undisputed that BOUSA, when it made these representations, had already concluded a repurchase agreement with Will. It follows that BOUSA might never have really intended to make full payment for gasoline. According to plaintiff, "book transfer," as it is understood in the industry, still contemplated that full payment or posting of letters of credit would take place. Even if book transfer and a netting out had been anticipated on December 13, 1985, however, the December 16, 1985 purchase/payment confirmation can be read as an unambiguous representation that "lifting" (delivery) of the product would take place. Even BOUSA's own operations manager acknowledged that the term "prior to lifting" would not be used when a book transfer and netting out were still contemplated.

■ Under New York law, a statement in a business transaction which, "while stating a truth so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation." *Sheridan Drive–In, Inc. v. New York*, 16 A.D.2d 400, 228 N.Y.S.2d 576, 585 (4th Dep't 1962) (quoting Restatement (Second) of Torts, § 529 (1977)). A factfinder, after accepting BAII's allegations that BOUSA knew the purpose of the BOUSA/Will contracts was for Will to receive credit from BAII, could determine from the existence of the second BOUSA/Will contract and from BOUSA's failure to disclose its existence to BAII that BOUSA never intended to post any letter of credit and that the December 16 purchase/payment confirmation, if not the entire transaction, was calculated to mislead BAII.

■ Finally, defendant argues that plaintiff cannot demonstrate that it relied on BOUSA's purported misrepresentation. Plaintiff alleges that in reliance upon BOUSA's misrepresentation, it "accepted the contract and defendant's assurances as sound security for its loans to Will, ... [and] continued to carry the loan and extend new credit to Will and to carry large amounts of Will inventory in transit and in storage." Complaint at 23. The Court does not read this passage in plaintiff's complaint as seeking damages for loans extended before 2:51 pm on December 16, 1985, the time at which BOUSA sent the purchase/payment confirmation which contained the alleged misrepresentation. Since plaintiff does not allege that it relied upon the alleged misrepresentation in extending the ARCO loan to Will, the Court need not consider whether plaintiff could recover damages arising from that loan under its fraud claim. Plaintiff can claim, however, that its reliance upon defendant's misrepresentation after its receipt of the purchase/payment confirmation was reasonable and foreseeable. Defendant offers other objections to what plaintiff seeks to recover, but these objections address the appropriate amount of damages, a factual question that should be resolved at trial.

### E. *Fraudulent Conveyance Claim*

Count V of plaintiff's complaint alleges that by permitting Will to net out the payments due under the first BOUSA/Will contract and the amount owed by Will under the second BOUSA/Will contract, Will fraudulently conveyed BOUSA's contractual obligation to pay BAII in order to "extricate [BOUSA] from Will's impending collapse." Complaint at 28. More specifically, plaintiff alleges that Will effected a fraudulent conveyance by freeing BOUSA from its burdensome obligation to pay BAII in exchange for the cancellation of its own virtually worthless unsecured obli-

gation to pay BOUSA the contract price under the repurchase agreement. Defendant seeks summary judgment on several grounds that have already been dealt with by the Court. However, defendant also argues that New York Debtor and Creditor Law permitted Will to set-off the amounts it owed BOUSA against the amounts due under the first BOUSA/Will contract, that plaintiff is precluded by the Bankruptcy Court order from pursuing this claim, and that BAII has not pled fraud with sufficient particularity.

■ While New York Debtor and Creditor law does permit a debtor to set-off its own debt against an amount owed to it by the creditor, N.Y. Debtor and Creditor Law § 151 (McKinney 1989), BOUSA's promise to pay BAII could be found to have been a waiver of that right. Moreover, at least in the context of bankruptcy law, courts when passing upon set-offs will look at the interest a third party has in the property which is being set-off. *See e.g. In re Multiponics, Inc.*, 622 F.2d 725 (5th Cir.1980). Finally, it is doubtful that § 151 could authorize a set-off which effected a fraudulent conveyance in any event.

■ Defendant also characterizes the set-off as a legitimate preference for one creditor over another. Absent fraudulent intent, a debtor is entitled to transfer an antecedent debt even if that transfer prefers one creditor over another. *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 631 F.Supp. 335, 346–47 (S.D.N.Y.1986), *aff'd*, 818 F.2d 240 (1987). Nevertheless, a debtor is clearly not permitted to prefer a party with whom it perpetrated a fraud over an authentic creditor who was also the victim of the fraud. In order to evaluate the conveyance at issue here, the Court must cut through the form of the transaction and look at its substance. The essence of the transaction, as described by BAII, was for Will to pay BOUSA to pose as a legitimate buyer so BAII would extend credit to Will.[3] Once it had duly sent the purchase/payment confirmation to BAII, BOUSA no doubt ex-

pected to get paid, and the set-off can be seen as an effort to pay BOUSA and prevent BAII from receiving any payment. If the transaction is viewed as plaintiff suggests, it was clearly fraudulent, and BOUSA, having knowingly participated, would hardly be a good faith creditor whom Will could prefer over the victim of the fraud. Under New York Debtor and Creditor Law, a conveyance made with "actual intent ... to hinder, delay, or defraud" creditors is fraudulent, N.Y. Debtor and Creditor Law § 276 (McKinney 1945), and the creditor may have the conveyance set aside or annulled to the extent necessary to satisfy his claim. *Id.* at § 278.

The Bankruptcy Court Order to which defendant refers prevents plaintiff from pursuing an avoidance action pursuant to §§ 547 & 548 of the Bankruptcy Code. However, the order expressly permits plaintiff to pursue precisely the type of state law fraudulent conveyance claim it now asserts. The Court also finds no basis for concluding that the Bankruptcy Court order prevents plaintiff from raising principles of bankruptcy law to support its claim under New York Debtor and Creditor Law.

■ The Court finds no merit to defendant's allegation that fraud was not pled with particularity. Plaintiff has alleged what actions were taken, when they were taken, the motives for taking them and how they were fraudulent. Defendants have clearly been given sufficient notice of what they are charged with. *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985).

### F. *Motion to Strike or Disregard*

Defendant offers a number of objections to the content of plaintiff's exhibits, affidavits and pleadings. Most of these objections go to the weight of the evidence. For the purposes of this motion alone, the Court also finds no basis for defendant's objections based on foundation or admissibility.

---

**3.** It should be noted that nowhere does defendant offer an alternative explanation for this transaction.

**1424**

### G. *Sanctions*

Defendant also moves for sanctions under Fed.R.Civ.P. 11. The Court does not find any basis for concluding that "a pleading has been interposed for any improper purpose, *or* ... after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Eastway Constr. Corp v. New York*, 762 F.2d 243, 254 (2nd Cir. 1985).

### III. *Conclusion*

Defendant's motion for summary judgment with respect to Counts I, II, IV, V is denied. Defendant's motion for summary judgment on Count III, the breach of contract claim, is granted to the extent that plaintiff seeks damages for injuries incurred before its receipt of BOUSA's 2:51 pm telex because BOUSA's promise to BAII to advise a letter of credit through BAII only became enforceable when it was actually communicated to BAII. Defendant's motions to strike and for sanctions are denied.

SO ORDERED.